Ryan B. Bell (#9956)
Robert P. Harrington (#12541)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
rbell@kba.law
rharrington@kba.law

Dallin B. Holt (*admitted pro hac vice*)
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**
15405 John Marshall Hwy
Haymarket, Virginia 20169
Telephone: (540) 341-8808
dholt@HoltzmanVogel.com

*Attorneys for Defendant WinRed, Inc.*

**IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MICHAEL L. LABERTEW, attorney-in-fact for, and on behalf of P.B., and as Co-Trustee of THE P.B. LIVING TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>WINRED, INC.,<br><br>Defendant. | **DEFENDANT WINRED, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Case No. 2:21-CV-00555-TC<br><br>Judge Tena Campbell |

Defendant WinRed, Inc. ("WinRed"), by and through undersigned counsel, files this Reply to Plaintiffs' Opposition to WinRed's Motion to Dismiss Plaintiffs' Complaint under Rule 12 of the Federal Rules of Civil Procedure.

**INTRODUCTION**

In their Opposition to WinRed's Rule 12 Motion to Dismiss, Plaintiffs spoke right past WinRed and responded to very few, if any, of WinRed's arguments. Unfortunately for Plaintiffs, simply repeating the same flawed arguments from their Complaint does not suddenly make the arguments plausible. Plaintiffs' primary arguments boil down to this: Because the Court must take what they say in their Complaint as true, the Court should ignore any factual or legal arguments to the contrary (even if jurisdictional), and deny WinRed's Motion to Dismiss. Plaintiffs' proposition is a highly simplified and one-sided interpretation of the Well Pleaded Complaint Rule—and is insufficient to cure the defects in their Complaint.

Aside from repeatedly citing inapplicable law pertaining to motions for summary judgment at the Rule 12 stage,[1] Plaintiffs' Opposition is misguided for

---

[1] For example, in citing to authority only pertaining to motions for summary judgment, Plaintiffs contend that WinRed somehow waived its ability to make factual arguments. *See* Opp'n at 5, 19. Further, Plaintiffs confusingly argue that WinRed's exhibits attached to its Motion to Dismiss should not be "admitted," all

many additional reasons. But given the page limits for a reply and in consideration of the Court's time, WinRed will only address a few herein, namely: (1) Plaintiffs lack standing, and the Court lacks jurisdiction, as Plaintiffs fail to sufficiently plead the requisite amount in controversy and because the purported injury is not traceable to WinRed nor can it be redressed by a judgment against WinRed, and (2) Plaintiffs failed to plead claims upon which the Court can grant relief—primarily because their claims are barred by the economic loss rule.

## ARGUMENT

### I. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THERE IS NO FEDERAL QUESTION AND PLAINTIFFS FAIL TO ESTABLISH THE REQUISITE AMOUNT IN CONTROVERSY.

First, in their Opposition, Plaintiffs failed to respond to WinRed's argument that Federal Question Jurisdiction is nonexistent in this matter—thereby conceding that argument.[2]

---

while citing authority applicable to either the summary judgment or trial phase of a matter. *Id.* at 5-6. These stretch arguments appear to be nothing more than shots in the dark that were cut-and-pasted from sections of unrelated previously filed oppositions to motions for summary judgment. As such, the Court should give these arguments the appropriate weight in accordance with the time it took Plaintiffs to craft these arguments—very little.

[2] Plaintiffs' lack of direct responses to WinRed's arguments is an ongoing theme throughout their Opposition. Thus, in failing to directly respond to WinRed's

Next, regarding the $75,000 amount in controversy needed for the Court to have diversity jurisdiction, Plaintiffs ignore the majority of WinRed's arguments, and in so doing, also concede them. *See supra* note 2. "When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiff[] must show that it does not appear to a legal certainty that they cannot

---

arguments, Plaintiffs concede those arguments. *See, e.g.*, *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1159 (D. Utah 2018) ("Defendants argue that '[i]n failing to respond to [Defendants'] arguments, Plaintiffs concede their claims should dismissed.' . . . The court agrees and dismisses Plaintiffs' Fifth and Sixth Claims on this basis."); *Shayesteh v. Raty*, No. 2:05-CV-85-TC, 2007 U.S. Dist. LEXIS 58210, at *9 (D. Utah Aug. 6, 2007) ("Plaintiff appears to concede that Claims Two and Three are not proper under *Bivens*. In fact, Plaintiff's opposition memorandum does not address Defendants' arguments regarding these claims. . . . Thus, the Court concludes that the allegations in Claims Two and Three of the First Amended Complaint fail to state a claim for relief under *Bivens*. Defendants' motion to dismiss these claims is granted."); *Browne v. City of Grand Junction*, No. 14-cv-809-CMA-KLM, 2015 U.S. Dist. LEXIS 73834, at *19 (D. Colo. June 8, 2015) ("As the City points out, under Ordinance 4627, Plaintiff [] must simply consent in order to receive the information that the ordinance may otherwise prohibit. . . . Plaintiffs appear to concede this by failing to respond to this argument in their response. Accordingly, the Court dismisses these claims."); *Thompson v. Indep. Sch. Dist. No. I-1*, No. CIV-12-13-M, 2012 U.S. Dist. LEXIS 46662, at *8-9 (W.D. Okla. Apr. 3, 2012) ("In plaintiff's response . . . plaintiff did not oppose District's arguments against plaintiff's claims for punitive damages. To date, plaintiff has failed to address said arguments that District has set forth. Having carefully reviewed the parties' submissions, the Court finds that plaintiff has implicitly conceded that it failed to state a claim upon which relief can be granted. Accordingly, the Court dismisses plaintiff's claim for punitive damages."); *Pinkney v. Tbc Corp.*, No. 2:19-cv-2680-HLT, 2020 U.S. Dist. LEXIS 55662, at *18 (D. Kan. Mar. 31, 2020) ("In response, Plaintiff addresses the first argument but not the second. . . . By not responding to this issue, Plaintiff appears to implicitly concede the merits of this argument.").

recover" $75,000. *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003). In its Opposition, Plaintiffs have failed to meet this well-defined burden. Aside from only including vague facts in their Complaint, Plaintiffs otherwise ignore arguments surrounding the economic loss doctrine and contract arguments pertaining to the amount in controversy. *See* Mot. to Dismiss at 3, 17–20. While these arguments will be discussed further, *infra*, simply put, Plaintiffs' reliance on tort damages (and the associated punitive/treble theories) is mistaken due to the fact the claims are governed by a contract—the Terms of Use cited by Plaintiffs in their own Complaint. *See id.*; *infra* at 9–12. As such, when viewing Plaintiffs' claims in the proper context—a contractual one—Plaintiffs' alleged amount in controversy falls well under the requisite $75,000.

The proper measure of Plaintiffs' damages is the value of the underlying contract. When Mrs. B contributed to candidates through WinRed, she accepted Terms of Use that expressly waived liability for WinRed, thereby creating a contractual agreement with WinRed. Plaintiffs now essentially seek to rescind that contract. *See* Opp'n at 19 (Plaintiffs allude to the new argument that Mrs. B possibly lacks capacity to enter into the Terms and Conditions.) "[I]n cases where a plaintiff seeks to rescind a contract, *the contract's entire value, without offset, is the amount in controversy.*" *Adv. Comfort Techs., Inc. v. London Luxury, LLC*, No. 2:17-cv-

00497-JNP, 2017 U.S. Dist. LEXIS 201960, at *12 (D. Utah Dec. 5, 2017) (quoting *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir. 2000)). In this case, the amount in controversy would therefore be $19,129.25, the only specific amount that Plaintiffs have alleged Mrs. B paid, and an amount woefully short of the $75,000 threshold for federal diversity jurisdiction.

Finally, Plaintiffs attempt to argue that the Exhibits attached to WinRed's Motion to Dismiss are somehow "inadmissible" at this stage of the proceedings. *See* Opp'n at 5–6. But Plaintiffs' arguments are particularly misguided as they relate to the threshold question of jurisdiction because Federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists[.]" *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).[3] "When a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.' [] 'In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment].'" *Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (internal citation omitted). "[A] party may go

---

[3] The applicability of WinRed's exhibits (specifically the Terms of Use) in the 12(b)(6) context is addressed *infra* at pages 9–10.

beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. . . . When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). WinRed's Exhibits are properly before this Court under those standards.[4] As such, Plaintiffs' "because I said so" arguments concerning the jurisdictional amount are insufficient, and only serve as another example of Plaintiffs' failure to substantively respond to the facts outlined in WinRed's Exhibits.

## II. **PLAINTIFFS LACK STANDING BECAUSE THE ALLEGED CONDUCT IS NOT FAIRLY TRACEABLE TO WINRED AND IS NOT REDRESSABLE.**

Just as Plaintiffs have failed to sufficiently plead facts pertaining to federal question and diversity jurisdiction, they have also failed to plead sufficient facts that show the alleged injury to Mrs. B meets the traceability and redressability requirements for Article III standing. For the reasons discussed *supra*, WinRed's Exhibits included in its Motion to Dismiss are relevant and are properly before the Court.

---

[4] It is worth noting that Exhibit B to WinRed's Motion to Dismiss (the "Declaration of Gerrit Lansing"), is before the Court solely as it relates to the threshold jurisdictional questions under Rule 12(b)(1). WinRed does *not* rely on that Declaration in support of its Motion under Rule 12(b)(6).

Rather than directly face the facts set forth in the Declaration of Gerrit Lansing and the Terms of Use (referenced in Plaintiffs' Complaint), which do not support Plaintiffs' threadbare assertions, Plaintiffs simply relied on their "because I said so" argument. And, in so doing, Plaintiffs concede many of WinRed's factual contentions. *See supra* note 2. Specifically, Plaintiffs concede that WinRed does *not* engage in any direct solicitation or other telemarketing activities, in contrast with Plaintiffs' implausible and unsupported prior allegations. Ex. B, Mot. to Dismiss, ¶¶ 5-6. WinRed's limited role in the transactions was made clear in the Terms of Use, Terms which Plaintiffs were very much aware of before filing this suit. *See* Ex. A, Mot. to Dismiss at 8 ("neither TS nor WinRed is a party or an agent of any transaction conducted via the Platform."). As such, the uncontested facts contained in WinRed's Motion to Dismiss are clear, and absolutely evidence that the alleged harm cannot be traced to WinRed.

Regarding redressability, the problem for Plaintiffs is that the relief sought in the Complaint is incapable of redressing the alleged injury because it fails to prevent or discourage those who contacted or solicited Mrs. B from continuing to do so. *See* Ex. B, Mot. to Dismiss ¶ 9 ("All the communications and solicitations referenced by Plaintiff in the Complaint were made by separate campaigns and committees without any agreement or involvement by WinRed. WinRed does not control any of these

other parties, nor does WinRed have any prior knowledge of, or approval over, any communications these parties may send."). Additionally, because Mrs. B went out of her way to donate money creatively to various campaigns through WinRed (creating a never-ending series of new contribution accounts in an effort to skirt WinRed's attempts to block her), no judgment against WinRed would stop Mrs. B from continuing to find ways to continue to exercise her First Amendment rights by donating to political causes with which she is aligned. Neither the third-party campaigns nor WinRed stole money from Mrs. B; rather, Mrs. B *repeatedly* gave it voluntarily. Plaintiffs fail to rebut *any* of these factual contentions.

### III. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED BECAUSE OF THE ECONOMIC LOSS RULE AND BECAUSE THE ALLEGATIONS ARE IMPLAUSIBLE UNDER *IQBAL* AND *TWOMBLY*.

#### A. Courts Routinely Enforce the Economic Loss Rule at the 12(b)(6) Stage and Plaintiffs Concede the Merits of WinRed's Arguments Concerning That Rule by Failing to Address Them.

Plaintiffs assert that consideration of the economic loss rule is "premature" because "the terms of service . . . are not in evidence" and because "Mrs. B has not alleged any contractual right." Opp'n at 20. Those assertions are unavailing. Indeed, "Courts often consider certain documents outside the pleadings at this stage, including matters incorporated by reference or integral to the claim, . . . *items appearing in the record of the case*, and *exhibits attached to the complaint* whose

authenticity is unquestioned." *Bateman v. JAB Wireless*, No. 2:14-cv-147-RJS, 2015 U.S. Dist. LEXIS 88094, at *9-10 (D. Utah July 6, 2015) (emphasis added).

Put differently, "[i]n considering a motion to dismiss, a district court not only considers the complaint, 'but also the attached exhibits,' the 'documents incorporated into the complaint by reference, . . . .'" *Jive Commerce, LLC v. Wine Racks Am., Inc.*, No. 1:18-CV-49 TS-BCW, 2019 U.S. Dist. LEXIS 48050, at *4 (D. Utah Mar. 21, 2019) (citations omitted). Therefore, "'[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *see also Lawrence v. Potter*, No. 2:17-CV-1239 TS, 2018 U.S. Dist. LEXIS 127805, at *8 (D. Utah July 30, 2018) (same). The Terms of Use were expressly referenced in the exhibits attached to the Complaint and Plaintiffs make no effort to challenge their authenticity (nor could they). "Courts must consider" such "documents incorporated into the complaint by reference[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Plaintiffs cannot benefit from the inclusion of the Exhibits attached to their Complaint at the TRO stage, and then claim they are inapplicable at the Rule 12 stage—Plaintiffs cannot have their cake and eat it too.

Plaintiffs' assertion that the economic loss rule does not apply because Plaintiffs do not assert a claim for breach of contract is also unavailing. "A party is not permitted, when it is unhappy with the bargain it has struck, to plead around that bargain." *Salt Lake City Corp. v. ERM-WEST, Inc.*, No. 2:11-CV-1174 TS, 2012 U.S. Dist. LEXIS 124468, at *22 (D. Utah Aug. 30, 2012). But Plaintiffs attempt to do that very thing. They overlook that "[t]ort remedies do not create opportunities of recovery that a party did not provide for during the meaningful exchange that cumulates in a contract." *Id.*

The application of the economic loss rule does *not* turn on Plaintiffs' causes of action. Instead, "the rule bars all tort claims seeking recovery for economic losses *when the claims are not based on a duty independent of the contractual obligations between the parties*." *Bigpayout, LLC v. Mantex Enters., Ltd.*, No. 2:12-CV-01183-RJS, 2014 U.S. Dist. LEXIS 146699, at *11 (D. Utah Oct. 14, 2014) (internal quotation marks and citations omitted) (emphasis added). Plaintiffs have failed to allege any such "independent duty." To the contrary, the Exhibits to Plaintiffs' own Complaint (and the Terms of Use incorporated by reference therein) establish that Plaintiffs' "claims are grounded in the same duties that exist by virtue of the parties' contract." *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 76, 436 P.3d 151, 171–72. The economic loss rule therefore applies.

Nor can Plaintiffs escape application of the economic loss rule by asserting that Mrs. B lacked capacity. Plaintiffs' Complaint does *not* seek to void the Terms of Use on such grounds. The Complaint instead centers on specific contributions by Mrs. B. Even if Plaintiffs had sought to void the contract, the proper measure of damages would continue to be the amount of payments that Mrs. B made (which are below the jurisdictional requirement of $75,000.00), not the other remedies outlined by Plaintiffs.[5] *Adv. Comfort Techs., Inc.*, 2017 U.S. Dist. LEXIS 201960, at *12.

### B. Plaintiffs Fail to State Claims Upon Which Relief Can Be Granted.

*Theft:* On their claim for theft, Plaintiffs concede that Utah Code Ann. §§ 76–6–404 and 405 (and 15 U.S.C. § 1644) do not apply and instead rely *solely* upon the interplay of Utah Code Ann. § 76–6–408(2) and 412(2). But Plaintiffs only address the "knowing or believing" requirement of Section 408(2) in cursory fashion and cannot state a *plausible* claim of theft under *Iqbal* and *Twombly* as a result of Plaintiffs' own Exhibits. Plaintiffs have simply failed to allege sufficiently that WinRed knew or believed that the money was stolen.

---

[5] Plaintiffs otherwise concede WinRed's arguments about the economic loss rule by failing to address them. *See supra* note 2. Such arguments include that the economic loss rule prevents recovery for both negligent and intentional torts where the duties between the parties sound only in contract and that Plaintiffs' claims arise from the same duties within the scope of the Terms of Use. *See* Mot. to Dismiss at 17–19.

***Conversion:*** This claim fails under the "wrongfully received" and "lawful justification" elements. WinRed serves to pass contributions through to the donor-designated ultimate recipient, and does not personally solicit contributions. *See* Ex. A to Mot. to Dismiss at 8 ("neither TS nor WinRed is a party or an agent of any transaction conducted via the Platform."). Thus, WinRed cannot have "wrongfully received" the contributions, and did not lack "lawful justification". Nor is there any indication that the money went anywhere but where it was designated *by Mrs. B* to go. Plaintiffs concede that their Complaint lacks sufficient details and accordingly implore for a "fair reading of Mrs. B's complaint," but the rules require more.

***Exploitation of a Vulnerable Adult:*** Plaintiffs must plausibly allege that WinRed "*knows or should know* that the vulnerable adult lacks the capacity to consent[.]" Utah Code Ann. § 76–5–111(9)(a)(ii) (emphasis added). But Plaintiffs cannot do so given that WinRed is an online Platform, and Mrs. B's interactions with the Platform did not afford WinRed the opportunity to have any substantive communications with her. Further, WinRed's Terms of Use explained "that neither TS nor WinRed is a party or an agent of any transaction conducted via the Platform." Ex. A to Mot. to Dismiss at 8. Plaintiffs hang their hat on donations that WinRed received after it was purportedly notified of Mrs. B's condition by her counsel.

Opp'n at 25. It was simply implausible under *Iqbal* and *Twombly* that WinRed knew or should have known that Mrs. B lacked capacity given those realities.

## CONCLUSION

For the foregoing reasons, WinRed respectfully requests that the Complaint be dismissed with prejudice.

DATED this December 22, 2021.

**KUNZLER BEAN & ADAMSON, PC**

*/s/ Robert P. Harrington*
Ryan B. Bell
Robert P. Harrington

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**

Dallin B. Holt *(admitted pro hac vice)*

*Attorneys for Defendant WinRed, Inc.*

# CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT

Pursuant to DUCivR 7-1(a)(4)(A)(ii), I hereby certify that the foregoing Reply in Support of Motion to Dismiss (the "Reply") complies with the 3,100 word-count limit required by that Local Rule. Specifically, the Reply contains 3,059 words, which number does not include words found in the face sheet, table of contents, table of authorities, signature blocks, certificate of service, or exhibits. I have calculated that 3,059 using Microsoft Word's "Word Count" function.

*/s/ Robert P. Harrington*
Robert P. Harrington

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 22nd day of December, 2021, I caused a true and correct copy of the foregoing **DEFENDANT WINRED, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** to be submitted for electronic filing through the Court's CM/ECF system and accordingly served on the following:

>Trent J. Waddoups
>**CARR & WADDOUPS**
>8 East Broadway
>Judge Building, Suite 609
>Salt Lake City, Utah 84111
>trent@cw-law.net
>
>*Attorney for Plaintiffs*

*/s/ Kiersten Slade*
Kiersten Slade
