IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL L. LABERTEW, attorney in fact for, and on behalf of, P.B., and as Co-Trustee of THE P.B. LIVING TRUST,<br><br><br>Plaintiff,<br><br>vs.<br><br><br>WINRED, INC.,<br><br>Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br><br>Case No. 2:21-cv-555-TC |

Defendant WinRed, Inc. moves for dismissal of Plaintiff Michael Labertew's Complaint. WinRed asserts the court lacks subject matter jurisdiction because Mr. Labertew has not established diversity jurisdiction and does not have standing.  WinRed alternatively asserts that Mr. Labertew's three causes of action—theft, conversion, and exploitation of a vulnerable adult—fail to state a claim upon which relief can be granted.

For the reasons set forth below, the court finds it has subject matter jurisdiction.  As for the merits of Mr. Labertew's three claims, the court dismisses the theft claim but denies WinRed's request to dismiss the conversion and vulnerable adult claims.

**Background**

Plaintiff Michael Labertew brings this action as the attorney-in-fact for P.B. (Mrs. B) and as Co-Trustee of The P.B. Living Trust.  He represents Mrs. B's interests because, as alleged in

the Complaint, Mrs. B, who is 69-years old, has severe memory loss, poor executive functioning skills, advanced dementia and need for home care.

He alleges that WinRed has preyed upon Mrs. B and taken advantage of her age and disabilities by repeatedly soliciting political donations through telemarketing, email, and the Internet despite knowing that Mrs. B is a vulnerable adult who does not have the capacity to make financial decisions. He further asserts that WinRed continued its efforts even after he sent them two cease-and-desist letters.

WinRed of course denies Mr. Labertew's allegations. Citing to its business model, WinRed asserts it is "simply a conduit to better assist individuals in donating to political committees" and that it does not affirmatively solicit donations from anyone, including Mrs. B. (Def.'s Mot. to Dismiss at 2, ECF No. 27.)

> The entirety of Plaintiff's Complaint rests on a flawed premise—that WinRed personally contacted Mrs. B "as part of [WinRed's] electronic solicitations and telemarketing campaign." Compl. at 5, ¶ 21. It did not. … WinRed does *not* engage in personal solicitation or other affirmative telemarketing activities. Instead, WinRed is a federal conduit PAC that accepts contributions designated for specific committees and then distributes those contributions to the designated recipients.

(Id. at 1–2 (emphasis in original).)

In part of its motion, WinRed challenges Mr. Labertew's assertion of diversity jurisdiction and standing under Federal Rule of Civil Procedure 12(b)(1). In the remainder of its motion, WinRed contends, under Rule 12(b)(6), that the allegations do not state a plausible claim for relief and that, in any event, Mrs. B agreed to WinRed's "*End User Terms of Use*" ("Terms of Use"), which bars her conversion claim under the economic loss rule.[1]

---

[1] To the extent WinRed asserts the rule also bars the claims for theft and exploitation of a vulnerable adult, it incorrectly applies the doctrine, which only applies to tort claims. KTM Health Care Inc. v. SG Nursing Home LLC, 436 P.3d 151, 169–70 (Utah Ct. App. 2018).

**Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"As a general rule, Rule 12(b)(1) motions to dismiss for lack of jurisdiction take one of two forms: (1) facial attacks; and (2) factual attacks.  Under a facial attack, the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true.  In a factual attack … the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends."  Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005) (internal citations omitted).   The court "has wide discretion to allow documentary and even testimonial evidence" when analyzing a factual attack under Rule 12(b)(1).  Id. (internal citations omitted).

WinRed brings a factual attack because it supports its argument with facts not alleged in the Complaint.  Specifically, WinRed relies on two documents outside the pleadings: (1) the declaration of WinRed's President, Gerrit Lansing, and (2) the Terms of Use, which describes WinRed's business model and applies to individuals who use WinRed's online platform to donate.

1. **Amount in Controversy**

Mr. Labertew brings his suit based on diversity jurisdiction, so he must show that the parties have diverse citizenship and that the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  WinRed contends Mr. Labertew does not allege an adequate amount in controversy.

The "legal certainty standard" requires a plaintiff to demonstrate "it is not legally certain that the claim is less than the jurisdictional amount."  Woodmen of World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1216 (10th Cir. 2003).  Case law establishes "a strong presumption favoring the amount alleged by the plaintiff," and the burden is easily satisfied.  Id.  "Generally,

dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction." Id. at 1217.

Citing Mr. Labertew's itemization of $19,129.25 in charges, WinRed says the Complaint falls short of the required $75,000. But Mr. Labertew's list is only illustrative. He alleges WinRed "obtained ... at least—if not more than" $19,000 from May 14, 2021, through September 2, 2021. (Verified Compl. ¶¶ 23-24, ECF No. 2.) He then alleges, "[u]pon information and belief, Defendant hounded and induced Mrs. B to make contributions in similar amounts and frequency for all time periods from August 13, 2019 to the present [September 23, 2021]." (Id. ¶ 25.) Doing the math, that means Mr. Labertew alleges WinRed took approximately $114,000 from Mrs. B.[2]

WinRed maintains that Mr. Labertew may not use his statement about "contributions in similar amounts and frequency" to supplement the allegation of $19,129 in losses. WinRed faults Mr. Labertew for "offer[ing] nothing to substantiate his claim" and for asking the court "to take his word for it concerning the $55,870.75 shortfall." (Mot. to Dismiss at 9.) But even if Mr. Labertew must provide something more than assertions "upon information and belief," his other allegations bring him above the threshold.

For instance, if one considers only the $19,129.25, the Complaint alleges damages exceeding $75,000. The theft statute allows treble damages as well as an award of attorney's

---

[2] Mr. Labertew alleges WinRed took approximately $19,000 over a three-and-a-half month period. He alleges WinRed took similar amounts at the same frequency for approximately two years. (Compl. ¶ 25.) Multiplying $19,000 by six four-month periods equals $114,000.

fees and costs,[3] and punitive damages are available in a claim for conversion.[4]  Utah Code Ann. § 76-6-408(2); Firkins v. Ruegner, 213 P.3d 895, 899 (Utah Ct. App. 2009).  The court may consider all of that when calculating the amount in controversy.  Burrell v. Burrell, 229 F.3d 1162, *2 (10th Cir. 2000) (unpublished); Woodmen, 342 F.3d at 1217–18.  In combination, those amounts push Mr. Labertew's alleged damages over the threshold.

Moreover, WinRed's evidence supports Mr. Labertew.  WinRed's President, in his declaration, says "Mrs. B donated a total of $39,702.16 to various campaigns and committees through WinRed[.]"  (Decl. of Gerrit Lansing ¶ 14, ECF No. 27-2.)  Trebling $39,702 exceeds the threshold jurisdictional amount.

WinRed alternatively argues that the amount in controversy is limited to $19,129 because the Terms of Use limits Mrs. B's recovery.  The argument is misplaced.  Although courts have held that the amount in controversy may be limited to the value of the contract, they have done so in contract cases.  Mr. Labertew does not mention the Terms of Use, much less assert a breach of contract claim.

---

[3] WinRed says Mr. Labertew may not rely on the treble damages portion of the theft statute because the statute "address[es] completely irrelevant conduct."  (Mot. at 11.)  That argument calls into question the merits of Mr. Labertew's theft claim, an assessment the court may not make when determining the amount in controversy.  Frederick v. Hartford Underwriters Ins. Co., 683 F.3d 1242, 1248 n.4 (10th Cir. 2012); Gibson v. Jeffers, 478 F.2d 216, 220–21 (10th Cir. 1973).

[4] WinRed contends that Mr. Labertew's assertion of punitive damages is so vague that the court would be speculating if it calculated the possible amount of exemplary damages.  The cases it cites are distinguishable.  See Nadal v. Cooper Cos., Inc., No. 8:20-cv-2621-T-33CPT, 2020 WL 7009917, at *1 (M.D. Fla. Nov. 27, 2020) (although plaintiff described her injuries in the complaint, she did not list the amount of damages tied to those injuries); Boylen v. Am. Family Mut. Ins. Co., No. 08-cv-01996-LTB-MJW, 2009 WL 180080, at *2 (D. Colo. Jan. 23, 2009) (the complaint did not specify any amount of damages).  Moreover, the court is not persuaded by WinRed's argument that Mr. Labertew does not plausibly allege action warranting punitive damages.  Taking Mr. Labertew's allegations as true, WinRed knowingly and continuously solicited and stole money from a vulnerable adult even after Mr. Labertew told it to cease and desist.  That could lead to an award of exemplary damages.

Under the circumstances, and given the lenient "legal certainty" standard, Mr. Labertew has adequately alleged facts showing the amount in controversy exceeds $75,000.  That, along with the undisputed diverse citizenship of the parties, means the court has diversity jurisdiction.

## 2.  Standing

To establish standing, the Mr. Labertew must satisfy three criteria.  First, he must show that Mrs. B suffered a concrete and particularized "injury in fact."  Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005).  To satisfy the second element, Mr. Labertew must show there is "a causal connection between that injury and the challenged action of the defendant—the injury must be 'fairly traceable' to the defendant, and not the result of the independent action of some third party."  Id.  The "fairly traceable" element, a causation requirement, is "something less than the concept of 'proximate cause'" but still requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."  Id. at 1156.  As for the third element, Mr. Labertew must demonstrate a substantial likelihood that "a favorable judgment will redress the injury."  Id. at 1154.  WinRed contends Mr. Labertew cannot establish the "fairly traceable" and redressability elements.

When analyzing standing, a court must assume the plaintiff's claims have merit. Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc).  At the same time, in a Rule 12(b)(1) motion, the defendant may contest the plaintiff's well-pled factual allegations and submit contrary evidence to show lack of jurisdiction.  Davis ex rel. Davis, 343 F.3d 1282, 1296 (10th Cir. 2003).  Normally, a court's consideration of evidence outside the pleadings does not convert the Rule 12(b)(1) motion to a Rule 56 motion for summary judgment. Id.; Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987).  But if outside evidence contradicts allegations going to the merits of the claim, a widely recognized exception to that

rule applies.  When resolution of the jurisdictional question is intertwined with the merits of the case, that is, when the decision requires "resolution of an aspect of the substantive claim," the court must treat the Rule 12(b)(1) motion as a motion under Rule 12(b)(6) or Rule 56.  <u>Paper, Allied-Industrial, Chemical & Energy Workers, Int'l Union</u>, 428 F.3d at 1292; <u>Davis ex rel. Davis</u>, 343 F.3d at 1296; <u>Wheeler</u>, 825 F.2d at 259.

WinRed asserts, contrary to Mr. Labertew's allegations, that it does not solicit contributions, that it serves only as a conduit allowing for exchange of money, that solicitations came from third parties outside the control of WinRed, and that it could not have known, and in fact did not know, about Mrs. B's circumstances.  In support, it cites to the Terms of Use and contends, "the Terms of Use establish[es] that WinRed was simply a conduit to better assist individuals in donating to political committees. … In other words, it was clear under those Terms of Use that WinRed was simply providing a platform for contributions, and not personally soliciting donations."  (Mot. to Dismiss at 2–3.)  As such, says WinRed, "[a]ny personal solicitations were *by other persons or entities*," and, consequently, "the conduct complained of in the Complaint is not fairly traceable to WinRed."  (<u>Id.</u> at 3–4 (emphasis in original).)

WinRed also relies on the declaration of Gerrit Lansing, its President, who describes the way WinRed generally conducts its business.

> WinRed does not solicit donors to make contributions via the website.  All earmarked contributions that pass through the website are the result of marketing efforts and solicitations made by the campaigns and committees who use the platform.  WinRed makes no affirmative contact with individuals who solicit donations.

(Lansing Decl. ¶ 5.)  Mr. Lansing further declares that

> WinRed did not "hound[] and induce[] Mrs. B to make contributions."  In fact, WinRed has never communicated with, nor solicited funds from, Mrs. B.  All the communications and solicitations referenced by Plaintiff in the Complaint were made by separate campaigns and committees without any agreement or involvement by WinRed.  WinRed does not control any of these other parties, nor

does WinRed have any prior knowledge of, or approval over, any communications these parties may send.

(<u>Id.</u> ¶ 9 (quoting Compl.).)

Pointing to this evidence, WinRed argues that "even if Mrs. B did suffer the injuries Mr. Labertew alleges, they would have resulted entirely from the independent actions of third parties over which WinRed has no control or knowledge, making those actions not fairly traceable to WinRed." (Mot. to Dismiss at 15.)  It follows, says WinRed, that without proof of conduct fairly traceable to WinRed, Mr. Labertew cannot show that a judgment against WinRed would redress the alleged injury.  "[T]he relief sought in the Complaint is incapable of redressing the alleged injury because it fails to prevent or discourage those who contacted or solicited Mrs. B from continuing to do so." (<u>Id.</u> at 16.)

WinRed's jurisdictional argument necessarily implicates the merits of Mr. Labertew's claims.  WinRed essentially asks the court to conclude that Mr. Labertew has no case, i.e., that it did not actually take the actions Mr. Labertew says it took and, consequently, WinRed did not cause Plaintiff's injury.  Because the standing question requires resolution of an aspect of Mr. Labertew's substantive claims, the court must treat WinRed's Rule 12(b)(1) motion as either a Rule 12(b)(6) motion or a Rule 56 motion.  <u>Davis ex rel. Davis</u>, 343 F.3d at 1296; <u>Wheeler</u>, 825 F.2d at 259.

The Third Circuit addressed similar circumstances in <u>Davis v. Wells Fargo</u>, 824 F.3d 333 (3d Cir. 2016), and came to the same conclusion.  There, the defendant Assurant filed a Rule 12(b)(1) motion to dismiss, supported by a declaration, which asserted the plaintiff lacked standing because his injury was not fairly traceable to Assurant and would not have been redressed by a favorable decision.  According to Assurant, the plaintiff should have sued Assurant's wholly owned subsidiary ASIC, because Assurant, the parent company, did not

contract with the plaintiff.  The court found the point debatable, but still noted that "[e]ven if Assurant were to assert that it had absolutely no relationship with ASIC, … its argument ought still to be treated as going to the merits of the case." Id. at 347.

> If for no other reason, a case or controversy exists to determine whether [the plaintiff] is suing the right insurance company, and, even if he should have sued ASIC, whether he may pierce the corporate veil and hold Assurant accountable for the alleged misconduct of ASIC.  Davis argues that Assurant may be held responsible; Assurant argues that it may not.  That is a merits question.

Id. at 348.  It explained:

> Assurant's assertions to the contrary prove too much.  If accepted, they would allow any litigant whose defense is "you've got the wrong party" to frame that lack-of-responsibility defense not as a merits challenge to be tried or to be considered under Rule 12(b)(6) or the summary judgment provisions of Rule 56 but as a Rule 12(b)(1) standing challenge, thereby empowering the defendant to buttress its legal arguments with factual assertions that contradict those in the complaint.  Although standing and merits questions may involve overlapping facts, standing is generally an inquiry about the plaintiff: is this the right person to bring this claim. It is generally not an inquiry into whether the plaintiff has got the right defendant.

Id. (internal citations omitted).

Raising the same type of argument the defendant in Wells Fargo used, WinRed says Mr. Labertew sued the wrong party.  The court may not decide that issue on a 12(b)(1) motion. Instead, the court will review the standing question based on the allegations in the Complaint under the Rule 12(b)(6) standard.

At the motion to dismiss stage, "the plaintiff's 'burden in establishing standing is lightened considerably.'"  Cressman v. Thompson, 719 F.3d 1139, 1144 (10th Cir. 2013) (quoting Petrella v. Brownback, 697 F.3d 1285, 1292 (10th Cir. 2012)).  Looking at the Complaint's well-pled allegations, the court finds that Mr. Labertew has adequately alleged conduct fairly traceable to WinRed and, it follows, redressability.  For instance, Mr. Labertew alleges that WinRed "conducts telephonic, internet and telemarketing solicitations, as part of its

political action business activities, in which it solicits contributions from those it contacts throughout the United States, including the State of Utah."  (Compl. ¶ 12 (emphasis added).)  He asserts that WinRed "has, for a number of years, preyed upon senior citizens and vulnerable adults, including Mrs. B, through persistent and repeated email, internet, electronic, text and other telephonic solicitations and telemarketing campaigns."  (Id. ¶ 13 (emphasis added).)  And he specifically claims that WinRed contacted and solicited money from Mrs. B:  "Mrs. B was frequently contacted by Defendant, hounded by its employees and representatives under the guise of 'friendship' or 'concern for the welfare and political stability of the United States' and then induced to contribute substantial sums of money to Defendant's political action committee."  (Id. ¶ 22 (emphasis added).)

Given the above, Mr. Labertew has sufficiently established standing to bring his claims against WinRed.

**Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

WinRed alternatively seeks dismissal under Federal Rule of Civil Procedure 12(b)(6).  According to WinRed, Mr. Labertew's three causes of action—theft (a statutory cause of action), the common law tort of conversion, and exploitation of a vulnerable adult (a statutory cause of action sometimes referred to as elder abuse)—fail to state a claim upon which relief may be granted.  For the reasons set forth below, the court finds that Mr. Labertew has stated a claim for conversion and elder abuse but has not properly pleaded his statutory claim of theft.

Under Rule 12(b)(6), "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"  Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When reviewing the Complaint, the court must accept all

well-pled factual allegations as true and construe them in the light most favorable to the

nonmoving party.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Strauss v. Angie's List, Inc., 951

F.3d 1263, 1267 (10th Cir. 2020).  "Mere 'labels and conclusions,' and 'a formulaic recitation of

the elements of a cause of action' will not suffice; a plaintiff must offer specific factual

allegations to support each claim."  Kansas Penn, 656 F.3d at 1214 (quoting Twombly, 550 U.S.

at 555).  Moreover, "a plaintiff must offer sufficient factual allegations to 'raise a right to relief

above the speculative level.'"  Id. at 1214 (citing Twombly, 550 U.S. at 555).

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged. The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. Where a complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility and plausibility
> of entitlement to relief.

Iqbal, 556 U.S. at 678 (internal citations and quotation marks omitted).

When reviewing a Rule 12(b)(6) motion to dismiss, a court typically may not consider

information outside the four corners of the complaint.  Gee v. Pacheco, 627 F.3d 1178, 1186

(10th Cir. 2010).  Recognizing this general rule, WinRed nevertheless points to information that

is not in the Complaint, contending the document it cites (the Terms of Use) falls within that

rule's limited exceptions.  The limited exceptions allow the court to consider (1) documents

attached to the complaint as exhibits, (2) documents the complaint incorporates by reference,

(3) documents referred to in the complaint if they are central to the plaintiff's claim and the

parties do not dispute the documents' authenticity, and (4) documents and information subject to

judicial notice.  Id.; Prager v. LaFaver, 180 F.3d 1185, 1188–89 (10th Cir. 1999).

The Terms of Use does not fall within the first three categories.  Mr. Labertew does not

allege a breach of contract claim, and nothing in his Complaint suggests the Terms of Use is

central to his claims of theft, conversion, and exploitation of a vulnerable adult.  He does not

refer to the Terms of Use in his Complaint, incorporate it by reference, or attach it to his Complaint.

WinRed's reliance on the fact that the Terms of Use is referenced in a letter attached to the Complaint is not sufficient. WinRed's attorney wrote that letter in response to a cease-and-desist letter Mr. Labertew's attorney sent to WinRed. In the letter, WinRed's attorney briefly discusses some of the Terms of Use terms and includes a website link to the document. But Mr. Labertew attached the letter to the Complaint to show that WinRed knew about the problem and continued to take Mrs. B's money. The fact that WinRed's counsel refers to the Terms of Use in the letter does not bring the Terms of Use into the four corners of the Complaint. The Terms of Use is peripheral to the issues Mr. Labertew raises.

But the court may judicially notice the Terms of Use. "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). "The court may judicially notice a fact that is not subject to reasonable dispute [if] it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Courts have taken judicial notice of information posted on websites. "It is not uncommon for courts to take judicial notice of factual information found on the world wide web." O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) (holding that district court "abused its discretion by failing to take judicial notice of [investment fund's earnings history] provided by [the defendant] on the internet[.]") (emphasis added). See also Trudeau v. Google LLC, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (taking judicial notice of terms of service posted by defendant on its website, because the terms were "not the subject of

reasonable dispute and their authenticity [was] not in question," but also holding that court was not "bound by any specific fact findings and legal conclusions set forth in [the terms of service]."); Doron Precision Sys., Inc. v. FAAC, Inc., 423 F. Supp. 2d 173, 178–79 n.8 (S.D.N.Y. 2006) (relying on the fact that party's representations on its website contradicted the party's representations in its pleadings).  Cf. Estate of Fuller v. Maxfield & Oberton Holdings, LLC, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012) (denying request to judicially notice "facts on a webpage whose source and reliability are unknown," particularly because the party "provided a web address, but no information about who maintain[ed the] website or how information on the website [was] obtained").

Mr. Labertew does not dispute that the Terms of Use is part of WinRed's website.  He simply asserts the document is not relevant and that WinRed may not use it to raise an affirmative defense.  Here, as required by Rule of Evidence 201, the Terms of Use and its terms are "not subject to reasonable dispute," because they come from a trusted source—i.e., WinRed's website—and their "accuracy cannot reasonably be questioned."  Accordingly, the court will consider the document when analyzing the Rule 12(b)(6) Motion.

## 1. **Theft**

In his first cause of action, Mr. Labertew cites to three Utah code sections prohibiting theft:  "theft" (§ 76-6-404), "theft by deception" (§ 76-6-405), and "theft by disposition" (§ 76-6-408(2)).  The first two provisions only apply to criminal acts and are irrelevant.[5]

The third one does create a private right of action:  "Any individual who violates

---

[5] See Schwarz v. Salt Lake Tribune, No. 200309081-CA, 2005 WL 1037843, at *1 (Utah Ct. App. May 5, 2005) (rejecting plaintiff's private right of action based on the crime of theft by deception, and noting that "[w]hen statutory provisions, such as [the criminal code provisions] cited by Plaintiff, contain only criminal penalties and do not create a private right of action, we generally will not create such a private right of action.").

13

Subsection 76-6-408(2) … is civilly liable for three times the amount of actual damages, if any sustained by the plaintiff, and for costs of suit and reasonable attorney fees."  Utah Code Ann. § 76-6-412(2).  That "theft by disposition" statute, as Mr. Labertew calls it, prohibits the following conduct:

> [a] person commits theft if the person receives, retains, or disposes of the property of another knowing that the property is stolen, or believing that the property is probably stolen, or who conceals, sells, withholds, or aids in concealing, selling, or withholding the property from the owner, knowing or believing the property to be stolen, intending to deprive the owner of the property.

Utah Code Ann. § 76-6-408(2).

WinRed first argues the allegations do not plausibly establish that WinRed knew or believed the money was stolen.  The Terms of Use states that WinRed is not "a party or an agent of any transaction conducted via the Platform."  (Terms of Use at 8, Ex. A to Mot. to Dismiss, ECF No. 27-1.)  It follows, suggests WinRed, that WinRed did not solicit the money and could not have suspected, much less known, that the party soliciting Mrs. B took the money without Mrs. B's permission.  But the generic terms of an adhesion contract such as the Terms of Use do not establish lack of knowledge of specific transactions, particularly because WinRed drafted the contract before the solicitations occurred.  Moreover, at a minimum Mr. Labertew alleges that WinRed continued to process the transactions after it received the cease-and-desist letters.  That suggests knowledge of unauthorized transactions.

WinRed's second argument, however, warrants dismissal.  The theft statute is primarily designed to address situations where an individual gives stolen property to a business dealing in secondhand goods.  The statute is titled "Receiving stolen property—Duties of pawnbrokers, secondhand businesses, and coin dealers," and refers to property that has already been stolen by someone else.  See Utah Code Ann. § 76-6-408(2) (prohibiting a person from committing certain acts "knowing that the property is stolen," "believing that the property is probably stolen," or

"knowing or believing the property to be stolen").  Mr. Labertew does not allege that WinRed received Mrs. B's money from third parties.  Instead, he alleges WinRed affirmatively stole Mrs. B's money through its <u>direct</u> solicitation of Mrs. B.  Because the statute does not cover such conduct, Mr. Labertew has not set forth facts establishing an essential element of his theft claim. Accordingly, the court dismisses the first cause of action.

### 2.  Conversion

WinRed challenges this cause of action on two grounds.  Relying on an affirmative defense, it first asserts the economic loss rule bars the claim because the Terms of Use governs the parties' relationship.  Second, WinRed says the allegations do not plausibly establish that WinRed wrongfully received or misappropriated the money, because "[a]lthough WinRed receives and distributes donations, it does *not* affirmatively solicit individual donors." (Mot. to Dismiss at 24 (emphasis in original).)

### a.  Economic Loss Rule

Under the economic loss rule, if a party to a contract seeks purely economic loss from the other contracting party under a tort theory, the remedy lies solely in contract unless the law imposes an independent duty of care.  <u>KTM Health Care Inc. v. SG Nursing Home LLC</u>, 436 P.3d 151, 169–70 (Utah Ct. App. 2018).  To determine whether the rule applies, courts ask "whether the duties existing between the parties arise as a result of the parties' contract or arise from other non-contractual sources." <u>Id.</u> at 170.  "If the tort alleges a breach of a duty that the contract itself imposes, then the claim is barred; the plaintiff can sue only for contract-based remedies." <u>Id.</u>  But if the tort claim is based on a "recognized independent duty of care," the economic loss rule does not bar the claim.  <u>Reighard v. Yates</u>, 285 P.3d 1168, 1176–77 (Utah 2012) (internal citations and quotation marks omitted).

WinRed asserts that Mrs. B's tort claim arises out of duties created by the Terms of Use:

> [T]he Terms of Use govern this very issue by explaining that WinRed is simply a political committee conduiting contributions to specific Page Creators ["those who create pages to seek donations for specific campaign committees via WinRed"] or Political Committees as directed by the donor.  The Terms of Use also govern "Recurring Contributions," "Future contributions or pledges," cancellation rights, and requested refunds.

(Mot. to Dismiss at 3, 19.)

In response, Mr. Labertew argues that the court may not consider WinRed's affirmative defense because the Terms of Use is not part of the pleadings and the Complaint does not refer to a contract between Mrs. B and WinRed.  "[O]n occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense.  But that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." Fernandez v. Clean House, LLC, 883 F.3d 1296, 1299 (10th Cir. 2018).

Mr. Labertew does not refer to, much less discuss, the Terms of Use in the body of his Complaint.  And although he attaches WinRed's July 16, 2021 letter to the Complaint (the letter that refers to the Terms of Use), he did so only to show WinRed's failure to stop the solicitations even after receiving the cease-and-desist letters.  (See Compl. ¶ 31 ("Notwithstanding [WinRed's] representations and agreement to cancel the recurring charges and close Mrs. B's account, as contained in Exhibit C [the July 16, 2021 letter], [WinRed] continued to charge Mrs. B and the Living Trust for contributions, fees and upsell charges after July 16, 2021, leading to this lawsuit.").  Even though the court has judicially noticed the Terms of Use, that does not change the fact that the Complaint does not suggest the document applies to Mrs. B's transactions.  Accordingly, the court will not consider the economic loss rule here.

Moreover, Mr. Labertew responds that even were the court to consider WinRed's defense, Mrs. B did not have the capacity to enter into the contract so the economic loss rule

does not apply.  "Competency to enter a contract is measured by whether the mental facilities

[were] so deficient or impaired that there was not sufficient power to comprehend the subject of

the contract, its nature and its probable consequences, and to act with discretion in relation

thereto, or with relation to the ordinary affairs of life."  Peterson v. Coca-Cola USA, 48 P.3d

941, 946 (Utah 2002) (internal citations and quotation marks omitted).  Mr. Labertew alleges that

Mrs. B "was under an activated 'general power of attorney' at all times material to the action as a

result of her severe memory loss, poor executive functioning skills, advanced dementia and need

for daily care and supervision of her financial affairs."  (Opp'n to Mot. to Dismiss at 21, ECF

No. 30 (citing Compl. ¶¶ 2, 7-9).)  Taking those allegations as true, it is possible that no

contractual relationship existed because Mrs. B's incapacity prevented her from agreeing to the

Terms of Use on WinRed's website.  That too would bar application of the economic loss rule.

In short, whether or not the court considers the Terms of Use, the economic loss rule does

not provide a basis for dismissal of the conversion claim.

       b.  Lack of Legal Justification

WinRed alternatively argues that Mr. Labertew does not plausibly allege conversion.  To

state a claim for conversion in Utah, the party must allege facts establishing willful interference

with a chattel, done without lawful justification, which deprived the party of use and possession

of the property.  Fibro Trust, Inc. v. Brahman Fin., Inc., 974 P.2d 288, 295–96 (Utah 1999);

Jones & Trevor Mktg., Inc. v. Lowry, 233 P.3d 538, 544 n.13 (Utah Ct. App. 2010); Bennett v.

Huish, 155 P.3d 917, 928 (Utah Ct. App. 2007).  Money may be a chattel when the party

wrongfully receives it or misappropriates it for a definite application.  State v. Twitchell, 832

P.2d 866, 870 (Utah Ct. App. 1992); West v. C.J. Prestman Co., No. 2:16-cv-00075-DN, 2017

WL 4621611, at *5–6 (D. Utah Oct. 13, 2017).

According to WinRed, Mr. Labertew's claim is not plausible because WinRed does not personally solicit contributions and "[a]ny personal solicitations of Mrs. B were *by other persons or entities*." (Mot. to Dismiss at 4 (emphasis in original).)  WinRed relies in large part on its Terms of Use to establish its role as "simply a conduit to better assist individuals in donating to political committees." (<u>Id.</u> at 2.)  According to the Terms of Use, "neither TS nor WinRed is a party or an agent of any transaction conducted via the Platform." (<u>Id.</u> (quoting Terms of Use at 8).)  WinRed also points to language saying that "representations or promises" came from other parties, not WinRed.  (<u>Id.</u> at 3 (quoting Terms of Use at 8).)  Then, in conclusion, WinRed contends that, "given its passive, pass-through role and its lack of personal solicitation of Mrs. B, … WinRed's passive receipt of those donations cannot plausibly be wrongful." (<u>Id.</u> at 24.)

Although the Terms of Use supports WinRed's characterization of its business model, the document's generic descriptions do not contradict Mr. Labertew's specific allegations.  Mr. Labertew alleges that representatives of WinRed directly contacted Mrs. B and took advantage of her disabilities to take money she did not intend to donate (and indeed, given her lack of capacity, could not have intended to donate).  (<u>See, e.g.</u>, Compl. ¶ 7 (alleging Mrs. B has "severe memory loss, poor executive functioning skills, advanced dementia, and need for home care"); ¶ 11 ("Mrs. B was unable to make sound financial decisions and … suffered from poor memory, lack of problem-solving skills, and poor functioning abilities"), ¶ 13 (alleging WinRed "preyed upon" Mrs. B "through persistent and repeated email, internet, electronic, text and other telephonic solicitations and telemarketing campaigns") ¶ 16 (alleging that WinRed's "employees and representatives relentlessly contact their lists of potential contributors, including Mrs. B, building a rapport with vulnerable and lonely individuals and leveraging that repeated contact to induce the target, including Mrs. B, to contribute funds to Defendant's political action

committee").)  Taking Mr. Labertew's allegations as true, and viewing them in a light most favorable to him as the non-movant, <u>Strauss</u>, 951 F.3d at 1267, the court finds the Complaint adequately asserts that WinRed acted contrary to its business model by directly interfering with and misappropriating Mrs. B's money.

For the reasons stated above, the court will not dismiss Mr. Labertew's conversion claim.

### 3.  Exploitation of a Vulnerable Adult

Utah criminalizes financial exploitation of a vulnerable adult.  <u>See</u> Utah Code Ann. § 76-5-111(9).  Additionally, a "vulnerable adult who suffers harm or financial loss as a result of exploitation has a private right of action against the perpetrator."  Utah Code Ann. § 62A-3-314(1).  The statute imposes liability when the person

> knows or should know that the vulnerable adult lacks the capacity to consent, and obtains or uses, or endeavors to obtain or use, or assists another in obtaining or using or endeavoring to obtain or use, the vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the vulnerable adult's property for the benefit of someone other than the vulnerable adult.

Utah Code Ann. § 76-5-111(9)(a)(ii).

Mr. Labertew alleges "[i]t was, or should have been, reasonably apparent to [WinRed] … that Mrs. B was unable to make sound financial decisions and that she suffered from poor memory, lack of problem-solving skills, and poor functioning abilities."  (Compl. ¶ 11.)  But according to WinRed,

> that assertion is conclusory and implausible given that WinRed did not affirmatively contact Mrs. B (or have any personal contact with Mrs. B via telephone or in person whatsoever). … WinRed is simply an online Platform and WinRed's operative Terms of Use explained "that neither TS nor WinRed is a party or an agent of any transaction conducted via the Platform."

(Mot. to Dismiss at 28–29.)

The problem WinRed faces with its challenge to this claim is the same one it faced in its

challenge to the conversion claim. WinRed's general mode of doing business does not foreclose Mr. Labertew's assertion that WinRed actually solicited money from Mrs. B. WinRed essentially asks the court to conclude that WinRed acted in a manner consistent with its business model. While the evidence may bear that out, Mr. Labertew alleges that WinRed did not. At the pleading stage, the court must take those allegations as true because the Terms of Use do not contradict them. Accordingly, the court will not dismiss Mr. Labertew's elder abuse claim.

## Conclusion

The court finds that it has subject matter jurisdiction. First, Mr. Labertew has adequately alleged more than $75,000 in controversy. Second, Mr. Labertew has standing because Mrs. B's injury (as alleged in the Complaint) is fairly traceable to WinRed and a judgment against WinRed would redress the injury.

As for the merits, Mr. Labertew has not stated a claim for theft under the Utah statute because the Complaint does not allege that WinRed received stolen goods from a third party. On the other hand, despite WinRed's general business model (described in broad and generic terms in the Terms of Use and by WinRed's President), Mr. Labertew has adequately alleged that WinRed wrongfully interfered with Mrs. B's money without legal justification, which satisfies the elements of conversion. Similarly, Mr. Labertew adequately states a claim of exploitation of a vulnerable adult. Although WinRed asserts it could not have known that Mrs. B was a vulnerable adult because it did not contact her, the general Terms of Use does not foreclose Mr. Labertew's theory based on his specific allegations.

## ORDER

For the foregoing reasons, Defendant WinRed, Inc.'s Motion to Dismiss (ECF No. 27) is GRANTED IN PART AND DENIED IN PART. Specifically, Mr. Labertew's first cause of

action (theft under Utah Code Ann. § 76-6-408(2)) is dismissed with prejudice.  The remainder of Mr. Labertew's case may go forward.

DATED this 18th day of May, 2022.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge