Ryan B. Bell (#9956)
Robert P. Harrington (#12541)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
rbell@kba.law
rharrington@kba.law

Dallin B. Holt (*admitted pro hac vice*)
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**
15405 John Marshall Hwy
Haymarket, Virginia 20169
Telephone: (540) 341-8808
dholt@HoltzmanVogel.com

*Attorneys for Defendant WinRed, Inc.*

---

**IN THE UNITED STATES DISTRICT COURT**
**THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MICHAEL L. LABERTEW, attorney-in-fact for, and on behalf of P.B., and as Co-Trustee of THE P.B. LIVING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>WINRED, INC.,<br><br>Defendant. | **REPLY MEMORANDUM IN RESPONSE TO ORDER FOR ADDITIONAL BRIEFING**<br><br>Case No. 2:21-CV-00555-TC-DAO<br><br>Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

Defendant WinRed, Inc. ("WinRed") submits this Reply Memorandum in response to the Court's November 9, 2022 Order for Additional Briefing (Dkt. 63) and Plaintiff's Response Brief Re: 3rd Party Beneficiary (Dkt. 67) ("Plaintiff's Response"). This Reply Memorandum is in support of WinRed's Motion to Stay and Compel Arbitration (Dkt. 43).

## INTRODUCTION

The key question posed by the Court's Order for Additional Briefing is "whether WinRed is a third-party beneficiary of the Terms of Use." (Order for Additional Briefing, Dkt. 63, at 1.) There can be no dispute that WinRed is a third-party beneficiary under the February 26, 2020 End User Terms of Use (the "February 2020 Terms"). Those Terms *expressly* provide that WinRed is a third-party beneficiary as follows: "You acknowledge and agree that WinRed and the Indemnified Parties are intended third-party beneficiaries of these terms." (Dkt. 43–1, Ex. A–1, at 14.) That point is critical because *eighty-nine percent* (89%) of Mrs. B's donations were subject to *those* terms. Put differently, out of the 722 contributions which WinRed has been able to identify as lined to Mrs. B (outlined in Exhibit B to the Motion, Dkt. 43–5), 646 were subject to the February 2020 Terms that expressly included WinRed as a third-party beneficiary.

The only remaining questions concern the other eleven percent (11%) of Mrs. B's contributions. Those questions are (1) whether the February 2020 Terms govern all contributions Mrs. B made on the WinRed platform given the Terms' broad language; or (2) whether WinRed is also a third-party beneficiary under the prior Terms of Use.

The answer is that the entirety of Mr. Labertew's action is subject to arbitration for at least three reasons. First, when Mrs. B assented to the February 2020 Terms (hundreds of times), she agreed that they would apply and require arbitration of "any controversy or claim" related to her use of the Platform, including claims against WinRed. Second, and relatedly, Mr. Labertew, himself, conceded that the February 2020 Terms are the *operative* terms given that language and the reality that prior versions of the terms contemplated that they would be amended. Finally, even if Mrs. B had not assented to the February 2020 Terms (which she did), WinRed would

nonetheless be a third-party beneficiary under the prior terms because they expressly reference WinRed and display WinRed's logo, and because the accompanying disclaimer language provided that Mrs. B accepted "WinRed's Terms of Use."

## ARGUMENT

This Argument section is divided into five parts. First, it explains why the overwhelming majority of Mrs. B's contributions are subject to the Terms in which WinRed is an express third-party beneficiary. Second, it explains that when Mrs. B assented to the February 2020 Terms (hundreds of times), she agreed that *any* controversy or dispute related to her use of the Platform should be subject to arbitration, making the third-party beneficiary language retroactive. Third, it explains why the February 2020 Terms govern all contributions Mrs. B made on the WinRed platform. Fourth, it explains that Mr. Labertew, himself, argued that the February 2020 Terms would be the *operative* arbitration provision and that his change of heart now is one of pure convenience. Finally, it explains why WinRed was a third-party beneficiary of the prior terms of use in any event.

### A. 89% of Mrs. B's Contributions Are Indisputably Governed by the February 2020 Terms.

The overwhelming majority of Mrs. B's contributions came *after* implementation of the February 2020 Terms. Exhibit B to the Motion to Stay and Compel Arbitration (the "Motion") is a list of 722 contributions that WinRed believes are from Mrs. B. Of those 722 contributions, 646 came *after* the operative February 26, 2020 date. (Dkt. 43–5.) That amount represents eighty-nine percent (89%) of Mrs. B's contributions (by number of contributions, not by amount of contributions). Thus, there can be no dispute that Mrs. B affirmatively agreed to arbitrate the great bulk of disputes arising from her contributions through WinRed. To say otherwise would

invalidate the numerous times she acknowledged the February 2020 Terms. It would be curious for Mr. Labertew to advocate for a piecemeal approach to the underlying dispute in light of that reality.

To assert that eleven percent (11%) of Mrs. B's contributions should be the subject of this federal action and that the other eighty-nine percent (89%) should be subject to an arbitration proceeding runs counter to notions of judicial economy. In any event, the law does not support such an approach for the reasons outlined below.

**B. Mrs. B Agreed—646 Times—That *Any* Dispute Regarding Her Use of the Platform Would Be Subject to Arbitration.**

Not only did Mrs. B acknowledge and agree to the February 2020 Terms 646 times, but the arbitration provision in those terms (and the prior terms) was transparently broad. Specifically, the arbitration provision provided that "any controversy or claim" related to Mrs. B's use of the Platform would be subject to arbitration, as follows: "*any controversy or claim* arising out of or relating to the Platform, [or] use of the Platform . . . shall be settled by binding arbitration . . .." (Dkt. 43–1, at 4 (emphasis added).) This action falls within that broad language. It is certainly a "controversy or claim arising out of or relating to the Platform, [or Mrs. B's] use of the Platform." *Id.* Put differently, this action is the very kind of dispute that Mrs. B agreed would be subject to arbitration.

That language regarding "any controversy or claim" cuts against any notion of two distinct proceedings regarding contributions before and after the February 2020 Terms,

respectively. The most natural reading of that "any controversy or claim" is that it includes controversies or claims that arise from prior contributions.[1]

### C. The February 2020 Terms Govern Any Controversy or Claim Regarding Any of Mrs. B's Contributions Through the WinRed Platform.

Mr. Labertew's Response incorrectly argued that the operation of the Terms of Use between Mrs. B and WinRed Technical Services ("TS") ended with each of her respective contributions. Mr. Labertew asserted that "[t]he plain language of the Terms of Use state that the relationship between 'You" and 'TS' is 'final and complete at the time you are charged." (Plaintiff's Response at 4 (citing Dkt. 43–1, at 11)). Mr. Labertew argued further that, "the Terms of Use start with use and end with a contribution" and "do not contemplate an ongoing relationship…" (*Id.*) The problem is that the language on which Mr. Labertew relied said nothing about such an end of the "relationship." In fact, that section simply explained that the contributor will be charged at the time of the contribution and cannot make changes or cancel the contribution at that point. The entirety of that paragraph is as follows:

> You understand and agree that you are charged at the time you make your Contribution. You further understand and agree that the transaction for the Contribution is final and complete at the time you are charged. Once a transaction is completed on the Platform, changes cannot be made to the transaction. After you have submitted your Contribution on the Platform, or you have otherwise directed TS to begin processing your Contribution by means designated by TS and communicated to you in TS's sole discretion, you may not cancel your transaction. TS may restrict transactions placed by or under the same customer account, the same credit card and/or transactions that use the same billing and/or shipping address.

[1] Mr. Labertew asserted in his Response that arguments related to the scope of the operative arbitration provision are barred by DUCivR 7(a)(8). (Response at 5–6). But such arguments are decidedly *not* barred because they go to the heart of the key question—the applicability of the arbitration provision.

(Dkt. 43–1, at 11.) Mr. Labertew seeks to stretch that language beyond recognition in his Response. But not only does that paragraph fail to support Mr. Labertew's contention about the end of the contract in any meaningful way, it cuts against Mr. Labertew's contention because it expressly contemplates an ongoing contractual arrangement. It references "customer account[s]," and the ongoing tracking of "the same credit card and/or transactions that use the same billing and/or shipping address." *Id.* That language regarding an ongoing customer account, and credit card and address information associated with that account, contemplates an ongoing contractual arrangement.

Based on this language, Mr. Labertew's analogy to purchases at a grocery store breaks down. Mrs. B did not make multiple trips to buy a gallon of milk, initiating a series of non-relational purchases each time. In her interactions with WinRed, she undertook contractual obligations beyond a mere transmission of funds. She was bound by ongoing terms of the agreements she affirmed, and she remains bound today. Thus, Mrs. B's argument about an end of such a contractual arrangement also fails under the reality of her 722 contributions. Each represents an individual transaction, but more importantly, each took place within the confines of a substantial set of contractual terms, some of which imposed *ongoing obligations* (such as the obligation to arbitrate if disputes arose in the future). The arbitration provision governs "any controversy or claim" regarding Mrs. B's use of the Platform and Mr. Labertew's arguments to the contrary are illusory.[2]

[2] The other arguments in Section A of Mr. Labertew's Response are similarly deficient. Mr. Labertew outlines four "subparts" that he purported to extrapolate from the Court's Order for Additional Briefing. (*See* Response at 3–5). But Mr. Labertew created those "subparts" out of whole cloth and they fail under the broad "any controversy or claim" language of the Terms of Use in any event.

**D. Mr. Labertew Admitted That the February 2020 Terms Contained "the Operative Agreement to Arbitrate" and Now Seeks to Backtrack Out of Expedience.**

Mr. Labertew, himself, conceded that the February 2020 Terms are the *operative* terms given that the prior versions of the Terms contemplated that they would be amended. He argued in his Opposition that because "each of the subsequent versions of the User Terms asserts that use of the website 'after we post any changes to these Terms constitutes your agreement to those terms[,]' . . . *the operative agreement to arbitrate*—if one had been created between the parties—*would be the final version contained in Exhibit A–1*." (Opp'n, Dkt. 53, at 11–12, n.1 (emphasis added).) Mr. Labertew was exactly right, and his sudden about face on that issue is without justification and appears to be out of pure convenience. The new Terms govern the entire contractual arrangement with Mrs. B, and she assented to those terms at least 646 times.

**E. WinRed Is a Third-Party Beneficiary of the Prior Terms of Use in Any Event.**

Mr. Labertew also overlooks that WinRed was a third-party beneficiary of the prior Terms of Use based on Utah's legal test. "In Utah, courts determine whether an entity is a third-party beneficiary by examining the contract at issue." *Gulf Coast Shippers Ltd. P'Ship v. DHL Exp. (USA), Inc.*, 2015 WL 4557573, *13 (D. Utah July 28, 2015). WinRed was a third-party beneficiary under the prior terms under that standard. In fact, the WinRed name and logo were prominently displayed in the February 19, 2019 Terms and the June 23, 2019 Terms at both the beginning and the end. That prominent display on the February 19, 2019 Terms included the WinRed name and the iconic WinRed shield as follows:



End User Terms of Use

**Effective Date: February 26 2019**



(Dkt. 43–2, at 2, 9.)[3] The use of WinRed's name and logo establish that WinRed was an intended third-party beneficiary of the Terms of Use.

WinRed's third-party beneficiary status is further cemented by language that Mrs. B reviewed and acknowledged each time she donated. Whenever Mrs. B made a contribution on WinRed's platform, the Platform first required Mrs. B to click a donation button that was accompanied by some close variation of the following disclaimer: "By clicking 'Donate' I accept ***WinRed's*** terms of use and privacy policy." (Dkt. 56–1 at 3; 56–2 at 3; 56–3 at 3; and 56–5 at 2 (emphasis added).) Mrs. B acknowledged hundreds of times that the "terms of use and privacy policy" were WinRed's and for the benefit of *WinRed*. Based on this plain language alone, it is manifest that WinRed is a third-party beneficiary of the terms.

Finally, Mr. Labertew's denial of WinRed's third-party beneficiary status raises a striking irony given that he has sued WinRed specifically for the donations Mrs. B made pursuant to the

[3] The WinRed mark and logo were nearly identical on the June 23, 2019 Terms of Use.

End User Terms of Service. It is completely inconsistent to argue that WinRed is responsible for the donations that have been made while arguing that WinRed cannot avail itself of the useful provisions of the agreement Mrs. B executed as an express condition of making those donations.

## CONCLUSION

Because the governing Terms of Use provide that "any controversy or claim arising out of or relating to the Platform, [or Mrs. B's] use of the Platform," and because those Terms clearly state that WinRed is an "intended third-party beneficiar[y] of these terms" (Dkt. 43-1, at 3), Plaintiff's claims should be referred to arbitration in their entirety.

DATED this 6th day of December, 2022.

**KUNZLER BEAN & ADAMSON, PC**

*/s/ Robert P. Harrington*
Ryan B. Bell
Robert P. Harrington

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**

Dallin B. Holt *(admitted pro hac vice)*

*Attorneys for Defendant WinRed, Inc*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of December, 2022, I caused a true and correct copy of the foregoing **REPLY MEMORANDUM IN RESPONSE TO ORDER FOR ADDITIONAL BRIEFING** to be submitted for electronic filing through the Court's CM/ECF system and accordingly served on the following:

Trent J. Waddoups
**CARR & WADDOUPS**
8 East Broadway
Judge Building, Suite 609
Salt Lake City, Utah 84111
trent@cw-law.net

*Attorney for Plaintiff*

*/s/ Kiersten Slade*
Kiersten Slade