Ryan B. Bell (#9956)
Robert P. Harrington (#12541)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
rbell@kba.law
rharrington@kba.law

Dallin B. Holt (*admitted pro hac vice*)
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**
Esplanade Tower IV
2575 East Camelback Road, Suite 860
Phoenix, Arizona 85016
Telephone: (540) 341-8808
dholt@HoltzmanVogel.com

*Attorneys for Defendant WinRed, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHAEL L. LABERTEW, attorney-in-fact for, and on behalf of P.B., and as Co-Trustee of THE P.B. LIVING TRUST,<br><br>    Plaintiffs,<br><br>v.<br><br>WINRED, INC.,<br><br>    Defendant. | **DEFENDANT WINRED, INC.'S MOTION TO DISMISS**<br><br>Case No. 2:21-CV-00555-TC-DAO<br><br>Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

Because of new, and highly relevant, facts that go directly towards this Court's jurisdiction, Defendant WinRed, Inc. ("WinRed"), by and through undersigned counsel, for a second time, moves to dismiss Plaintiff's Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## RELIEF SOUGHT AND GROUNDS FOR RELIEF

This Motion to Dismiss (the "Motion") seeks dismissal of Plaintiff's Complaint because facts have arisen in the 14 months since the Stipulation in Lieu of Preliminary Injunction (the "Sipulation"), (Dkt. No. 23), which show that WinRed is not the cause of Plaintiff's alleged harm and that the relief sought—injunctive relief against WinRed—will not redress Plaintiff's alleged harm. Accordingly, the Motion seeks dismissal of Plaintiff's Complaint under Rule 12(b)(1) for lack of Article III standing—namely a lack of traceability or redressability.

## INTRODUCTION AND BACKGROUND

This case sits in a unique procedural posture in that WinRed and Plaintiff (the "Parties") have been subject to the Stipulation for over 14 months, which was intended to stop the alleged harm to Mrs. B during the pendency of this matter. During this time, facts have come to light that require the Court—pursuant to its ongoing duty to assess jurisdiction—to dismiss this case for lack of Article III standing.

On October 13, 2021, the Parties entered the Sipulation, wherein WinRed agreed that (among other things) it would not knowingly contact, communicate with, or obtain money or property from Mrs. B, including from the P.B. Living Trust or Mrs. B's credit cards or bank accounts. (*See* Dkt. No. 23 at 1–2.) In the Stipulation, the Parties also agreed to the following:

> [I]n the event either [Party] becomes aware (or otherwise reasonably suspects) that [Mrs. B] has attempted to use or is using new methods of payment, including, but not limited to, credit and debit cards, to make contributions to, or through, individual donation websites, hosted at WinRed.com, that they shall provide written notice thereof (via email to counsel of record) as soon as reasonably practicable to the other party.

(*Id.* at 2.) WinRed has complied with the Stipulation since the day it was entered and has not contacted or solicited Mrs. B in *any* way. (*See* Dkt. No. 69.)

A few weeks after the Stipulation, WinRed filed its first Motion to Dismiss ("Original MTD"), seeking to dismissal of Plaintiff's Complaint under Rule 12(b)(1) and (6). (*See* Dkt. No. 27.) Specifically, WinRed sought to dismiss the Complaint for Plaintiff's lack of Article III standing. (*Id.* at 19–24.)

In May of 2022, the Court ruled on WinRed's Original MTD, granting it in part and denying it in part. (*See* Dkt. No. 73.) Pertinent here, the Court rejected WinRed's standing arguments at that time because, in part, Plaintiff's burden to establish standing is lightened at the motion to dismiss stage. (*Id.* at 9.) Consequently, viewing the facts at that time, in the light most favorable to Plaintiff, the Court was not persuaded that WinRed's proffered evidence—*i.e.*, its terms of use and the Declaration of WinRed's President—was sufficient to contradict the facts alleged in Plaintiff's Complaint. (*Id.* at 6–10.)

However, new facts have emerged in the 14 months since the Stipulation was entered. (*See* Dkt. No. 69.) Specifically, on December 5, 2022, WinRed became aware that Mrs. B had used a new combination of payment method and email address that she used to elude WinRed's blocklist and successfully made 11 contributions through WinRed.com between October 10–14, 2022, despite WinRed's concerted efforts to block and prevent such contributions. (*See* Dkt. No. 69-1 at ¶¶ 6–7.) WinRed added this new information to its blocklist and refunded each of the payments. (*Id.*) WinRed has provided written notice of these new contributions via email to counsel of record. (*See* Dkt. No. 69-2.)

Additionally, Mrs. B has attempted to contribute some 3,142 times between October 13, 2021—the day the Parties entered into the Stipulation—and December 5, 2022, using known methods of payment and email addresses, each of which was blocked by WinRed. (*See* Dkt. No.

69-1 at ¶ 6.) Moreover, WinRed has complied with its agreement in the Stipulation to not knowingly contact or communicate with Mrs. B in any fashion. (*See* Dkt. No. 69 at 2.) Despite this reality, the alleged harm to Mrs. B continues.

These facts, even viewed in the light most favorable to Plaintiff, demonstrate that WinRed is not the source of Plaintiff's alleged harm, nor can Plaintiff's suit against WinRed redress the wrongs of which she complains. It is not often a court is able to have a 14-month window in which to see if the requested remedy will actually redress the problem. Here, this 14-month case study clearly establishes that WinRed is not the reason that Mrs. B donated, nor will an injunction against WinRed redress the alleged harm to Mrs. B. For these reasons, Plaintiff lacks Article III standing, and this case should be dismissed.

Finally, in the event the Court is inclined to grant Plaintiff's request for discovery and a summary trial regarding Mrs. B's capacity, before ordering that expensive, time consuming, and often embarrassing discovery process, the Court should first order a short six-week discovery window where the Court can confirm that WinRed is indeed *not* the source of, and can provide *no* remedy for, Mrs. B's alleged injury.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) requires an action to be dismissed if the Court lacks subject matter jurisdiction over the claim. "Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.'" *Rucho v. Common Cause*, 139 S. Ct. 2484, 2493 (2019). The doctrine of standing arises out of the "case" or "controversy" language of Article III. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). For a plaintiff to establish Article III standing, which is required for a court to have jurisdiction to hear a matter, they must show that

they "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial opinion." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (internal citation and quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing [the three elements of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal citation omitted).

## ARGUMENT

"The objection that a federal court lacks subject-matter jurisdiction, may be raised at any stage in the litigation." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006) (internal citation omitted). Indeed, courts have "an ongoing, independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from a party." *Cowan v. Hunter*, No. 17-CV-324-TCK-FHM, 2018 U.S. Dist. LEXIS 37834, at *6 (N.D. Okla. Mar. 8, 2018) (citing *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006)); *see also* Fed. R. Civ. P. 12(h)(3).

To that end, Court's must reassess jurisdiction as facts become available. *See e.g.*, *Macintyre v. JP Morgan Chase Bank, Civil Action* No. 12-cv-2586-WJM-MEH, 2013 U.S. Dist. LEXIS 129787, at *14 (D. Colo. Sep. 11, 2013) ("Given the new facts that have come into play—along with the complex legal issues involved—it would be remiss for this Court to address Defendant's [12(b)(6)] Motion to Dismiss without further briefing on whether jurisdiction exists.").

Here, the Court finds itself in a procedural posture that does not often present itself. The Court has already denied an earlier 12(b)(1) Motion. But the action has not moved forward

substantially procedurally and, since the entry of the Stipulation 14 months ago, new and important facts have arisen that call into question the jurisdiction of the Court to hear this matter.

Although this fact pattern is not often replicated, it is very similar to a 2013 case out of the District of Colorado, *Macintyre*, where the court was faced with the "unique" circumstance of significant factual developments implicating the jurisdiction of the court, which occurred between the magistrate judge's recommendations and the time the district court considered objections to those recommendations. *See id.* at \*12. Here, too, the Court is faced with a unique circumstance: WinRed has been under the Stipulation for 14 months, during which time WinRed's compliance with the Stipulation—which was intended to prevent harm to Mrs. B— and Mrs. B's continued harm demonstrate that WinRed is *not* the source, nor the remedy, of Mrs. B's alleged harm. In short, the Court finds itself in a unique procedural no-man's-land.

Because the parties in *Macintyre* had not briefed the issue of jurisdiction, the court declined to rule on the merit issues "without further briefing on whether jurisdiction exist[ed]." (*Id.* at \*14.) But here, WinRed has briefed the issue, and Plaintiff will no doubt to do the same. As the *Macintyre* court did, this Court should decline to rule on any issues related to the merits of the case—such as the pending Motion to Compel Arbitration, (Dkt. No. 42)—until the Court has decided whether jurisdiction exists in light of the changing facts as "events . . . have occurred after [the Court's earlier 12(b)(1) denial] that have altered the landscape upon which the original [12(b)(1) denial] was based." *Macintyre*, 2013 U.S. Dist. LEXIS 129787, at \*12.

In short, facts have changed, and the Court must reassess its jurisdiction before this case may proceed.

I.     **NEW FACTS ESTABLISH THAT PLAINTIFF LACKS STANDING BECAUSE THE ALLEGED CONDUCT IS NOT FAIRLY TRACEABLE TO WINRED, NOR IS IT REDRESSABLE.**

To establish standing, Plaintiff (as the party invoking federal jurisdiction) bears the burden of showing not only injury-in-fact, but also that there is "a causal connection between the injury and the conduct complained of," meaning that the alleged injury is "fairly traceable to the challenged *action of the defendant*, and not the result of the independent action of some third party not before the court." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (emphasis added) (citation omitted). Plaintiff also bears the burden of showing that it is "likely . . . that a favorable judgment will redress the plaintiff's injury." (*Id.* at 1154.) Because Plaintiff cannot satisfy either of these elements with respect to WinRed, he lacks standing to bring these claims.

A.     **Plaintiff Cannot Demonstrate Causation.**

To show causation, "Article III [requires] proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys.*, 416 F.3d at 1156. Here, as the new facts discussed above further illustrate, there is no causal relationship between WinRed's conduct and the injury alleged by Plaintiff. Specifically, in the Complaint, Plaintiff alleges that "Defendant conducts telephonic, internet and telemarketing solicitations, as part of its political action business activities," Compl. ¶ 12, that it has "preyed upon senior citizens and vulnerable adults, including Mrs. B, through persistent and repeated email, internet, electronic, text and other telephonic solicitations and telemarketing campaigns," *id.* ¶ 13, and that "Mrs. B was frequently contacted by Defendant, hounded by its employees and representatives . . . and

then induced to contribute substantial sums of money to Defendant's political action committee."

(*Id.* ¶ 22.)

However, as described above and in Defendant's Original MTD,[1] WinRed did not engage

in the alleged conduct, and WinRed's conduct did not cause the injuries alleged above. As

previously explained, WinRed *does not* engage in any direct solicitation or other telemarketing

activities. (*See* Dkt. No 27 at 21.) Thus, WinRed initially argued that any contributions that were

solicited from Mrs. B, as alleged by Plaintiff, that passed through https://winred.com, would

have been the result of actions taken by the committees using the platform. (*Id.*) Simply put,

WinRed never contacted Mrs. B via electronic solicitations or telemarketing campaigns, nor did

its employees or representatives, because it never affirmatively contacts or solicits *any*

individuals to donate via these means.

This is now further illustrated by the fact that during the more than 14 months the

Stipulation has been in effect, WinRed has not knowingly contacted Ms. B. Yet, during that

same time, Ms. B has continued to attempt to donate to campaigns more than 3,000 times. This

fact elucidates that WinRed also could not have "induced" or "hounded" Mrs. B to make

contributions—as the Complaint alleges—because the alleged communications have continued

while WinRed has been enjoined from communicating with Mrs. B and has adhered to that

injunction.

Accordingly, even if Mrs. B did suffer the injuries Plaintiff alleges, they would have

resulted entirely from the independent actions of third parties over which WinRed has no control

---

[1] WinRed incorporates by reference its previous arguments on standing. (*See* Dkt. No. 27 at 19–24.) For the convenience of the Court, those argument will only be summarized in this brief.

Page 8 of 14

or knowledge, making those actions not fairly traceable to WinRed. *See Nova Health Sys.*, 416

F.3d at 1156. Because Plaintiff fails to show *any* likelihood that WinRed is the actor that caused

the injuries alleged here (much less a "substantial likelihood," *cf. id.*), Plaintiff lacks standing to

bring these claims against WinRed.

      **B.**      **Plaintiff Cannot Demonstrate Redressability.**

To establish standing, Plaintiff must also show that it is "likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." *Cressman v. Thompson*,

719 F.3d 1139, 1146–47 (10th Cir. 2013). Causation and redressability are closely

linked because "a federal court [can] act only to redress injury that fairly can be traced to the

challenged action of the defendant, and not injury that results from the independent action of

some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42

(1976).

As WinRed argued previously, the problem for Plaintiff is that the relief sought in the

Complaint is incapable of redressing the alleged injury because it fails to prevent or discourage

those who contacted or solicited Mrs. B (if any) from continuing to do so. (*See* Dkt. No. 27 at

23.) This position is now further evidence by the fact that the current relief—the Stipulation—

has failed to address Plaintiff's alleged harm for the 14 months it has been in effect. In fact, Mrs.

B's attempted donations have *increased* since the Parties entered into the Stipulation. This makes

sense because any relevant third parties in this action are not before this Court. The injury that

was allegedly caused by independent actions (*e.g.*, phone calls or solicitations) of those third

parties cannot be redressed by relief sought by Plaintiff in the Complaint. Any relief granted

would not punish the parties who allegedly harmed Mrs. B, nor would it discourage such actions

from taking place in the future. Indeed, punishing WinRed for the behavior of non-parties will do

nothing to stop the complained of behavior from continuing, because those same parties have

been undeterred by the Stipulation that WinRed is currently under and with which it is already

complying.[2]

Moreover, as Mrs. B. went out of her way to creatively donate money to various

campaigns through WinRed, no judgment against WinRed would stop Mrs. B. from continuing

to find ways to continue to exercise her First Amendment rights by donating to political causes

with which she is aligned. Indeed, as the last 14 months have demonstrated, Ms. B will

apparently stop at nothing to donate to the political causes she supports, as she has attempted to

do so more than 3,000 times in the period in which the Stipulation has been in effect.

*     *     *     *

For these reasons, this Court lacks jurisdiction to hear this matter because Plaintiff lacks

Article III standing. "[B]ecause federal courts have limited jurisdiction, a court must dismiss an

action whenever it determines it lacks jurisdiction." *Hahn v. United States Postal Serv.*, 1995

U.S. App. LEXIS 13462, at *2 (10th Cir. 1995). Therefore, this action should be dismissed.

## II.    ALTERNATIVELY, THE COURT SHOULD ORDER LIMITED JURISDICTIONAL DISCOVERY.

If the Court is inclined to allow discovery on the issue of capacity, it should first order

limited jurisdictional discovery on the issue of standing.

---

[2] Interesting to note that Mr. Labertew, both as attorney-in-fact for Mrs. B and as co-Trustee of the P.B. Living Trust, appears to have made no effort to cancel any credit or debit cards or otherwise attempt to stop Mrs. B from engaging in financial transactions. Further, he has not initiated any of the well-defined procedures individuals can go-through in Utah State Court to remove someone's financial independence. *See, e.g.*, Utah Code Ann. § 75–5–301, *et seq.* and Utah Code Ann. § 75–5–401, *et seq.* (governing the appointment of guardians and conservators, respectively).

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (quotation omitted). As with other types of discovery, district courts possess discretion to permit jurisdictional discovery. (*Id.* at 1326.) In the Tenth Circuit, denial of such discovery is reviewed for abuse of discretion. *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 (10th Cir. 2010). "[A] refusal to grant [jurisdictional] discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant," and "[p]rejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Sizova*, 282 F.3d at 1326 (citations and quotations omitted); *see also Breakthrough Mgmt. Grp.*, 629 F.3d at 1189. It is WinRed's burden, as the party seeking discovery, to demonstrate its entitlement to jurisdictional discovery and the resulting prejudice from its denial. *Breakthrough Mgmt. Grp.*, 629 F.3d at 1189 n.11.

Here, as demonstrated above, WinRed has alleged enough facts to at least controvert the question of jurisdiction. Plaintiff's alleged injuries are not traceable to WinRed, nor does suit of WinRed provide a means to redress them. As 14 months, continued solicitations, and more than 3,000 attempted donations demonstrate, WinRed is not the party that Plaintiff should sue in order to prevent the alleged harm. Consequently, Plaintiff lacks standing, and this Court is without jurisdiction to hear this case. To allow this case to continue, without at least ordering jurisdictional discovery, would undoubtedly result in prejudice to WinRed.

Moreover, a short six-week discovery on the issue of jurisdiction would be far less burdensome than discovery on the issue of Mrs. B's capacity to engage in the alleged financial

Page 11 of 14

transactions. Discovery on capacity would include, but not be limited to, depositions (of medical experts, Mrs. B, and her caregivers) and document discovery pertaining to Mrs. B's general financial affairs during the relevant periods of time, followed by competing motions regarding the capacity issue. WinRed has no desire to spend the time and money necessary to conduct such discovery—nor to put Mrs. B through the expensive and often difficult and embarrassing process of taking away an individual's financial independence—when a more limited jurisdictional discovery will allow the Court to dispose of this case more easily and with less burden on the Parties. Facts associated with jurisdiction are readily and easily identifiable through phone records and simple fact discovery where no experts would be needed.

Therefore, if the Court is not inclined to grant WinRed's 12(b)(1) Motion at this time, WinRed requests that the Court order jurisdictional discovery on the issue of standing.

## <u>CONCLUSION</u>

For the foregoing reasons, WinRed respectfully requests that the Complaint be dismissed with prejudice; or, alternatively, that the Court order limited jurisdictional discovery on the issue of standing for the purposes of ruling on WinRed's Rule 12(b)(1) Motion.

DATED this December 20, 2022.

**KUNZLER BEAN & ADAMSON, PC**


*/s/ Robert P. Harrington*
Ryan B. Bell
Robert P. Harrington


**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**

Dallin B. Holt (*admitted pro hac vice*)

*Attorneys for Defendant WinRed, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 20th day of December, 2022, I caused a true

and correct copy of the foregoing **DEFENDANT WINRED, INC.'S MOTION TO DISMISS**

to be submitted for electronic filing through the Court's CM/ECF system and accordingly served

on the following:

Trent J. Waddoups
**CARR & WADDOUPS**
8 East Broadway
Judge Building, Suite 609
Salt Lake City, Utah 84111
trent@cw-law.net

*Counsel for Plaintiffs*

_/s/ Kiersten Slade_____
Kiersten Slade