Ryan B. Bell (#9956)
Robert P. Harrington (#12541)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, UT 84101
Telephone: (801) 994-4646
Fax: (801) 758-7436
rbell@kba.law
rharrington@kba.law

Abbe D. Lowell (admitted *pro hac vice*)
Christopher D. Man (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, DC 20036
Telephone: (202) 282-5000
ADLowell@winston.com
CMan@winston.com

*Attorneys for Defendant WinRed, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## THE DISTRICT OF UTAH, CENTAL DIVISION

| | |
|---|---|
| MICHAEL L. LABERTEW, attorney in fact for, and on behalf of, P.B., and as Co-Trustee of the P.B. LIVING TRUST,<br><br>     Plaintiffs,<br><br>v.<br><br>WINRED, INC.,<br><br>     Defendant. | **REPLY MEMORANDUM IN SUPPORT OF OBJECTION TO PLAINTIFF'S DECLARATION OF DR. MICHAEL KAGEN, M.D.**<br><br>Case No. 2:21-CV-00555-TC-DAO<br><br>Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

Defendant WinRed, Inc. ("Defendant" or "WinRed") respectfully submits this Reply

Memorandum in support of its Objection to Plaintiff's Declaration of Michael Kagen, M.D. (the

"Declaration"). WinRed objects to the Declaration on the grounds that it is inadmissible under

Rule 702 of the Federal Rules of Evidence ("FRE"), and that it failed to comply with Rules 26 and 56 of the Federal Rules of Civil Procedure ("FRCP").

## INTRODUCTION

Mr. Labertew's Opposition does not even attempt to argue that the Declaration complied with Rule 702 of the FRE or Rule 26 of the FRCP. The reason is clear—it is indisputable that the Declaration failed to outline the facts, data, or methodology on which Dr. Kagen relied, much less establish that they were sufficient or reliable. Nor does Mr. Labertew dispute that he failed to make a Rule 26 disclosure regarding Dr. Kagen. Given Mr. Labertew's tacit concession on those points, the key question in this Objection is whether the Declaration is somehow excused from complying with those rules. It is not.

Mr. Labertew suggests that the opinions of treating physicians are nearly *per se* admissible and that Rule 705 provides that an expert opinion can be provided without disclosure of the facts, data, or methodology on which the expert relies. But treating physicians are subject to the same rules as any experts. And Rule 705 does *not* override Rule 702 or Rule 26. Instead, Rule 705 simply relates to the *order* in which evidence is presented *to the jury at trial*.

Mr. Labertew argues that Rule 26 does not apply because the Court has stayed case deadlines pending disposition of the Motion to Stay and Compel Arbitration (the "Motion"). But it is obvious that the rule applies to Mr. Labertew's affirmative decision to seek to introduce expert opinion testimony at this stage. He cannot seek to present expert opinion testimony without following the rules. Mr. Labertew also suggests that the Declaration—or unidentified portions thereof—simply contains lay opinion testimony from Dr. Kagen and that expert opinion testimony is unnecessary. But it is manifest from the Declaration that Dr. Kagen bases his

opinions on his scientific, technical, or other specialized knowledge as a doctor, and Mr. Labertew's argument that expert opinion is unnecessary cuts *against* consideration of the defective Declaration, not in favor of it.

Finally, most of Mr. Labertew's Opposition is as an improper attempt to supplement his briefing on the broader issues of capacity and the Motion. Indeed, he employs 14 pages of briefing to respond to the 7-page Objection, and most of his Opposition relates to broader issues of the Motion instead of the narrower issues of the Objection and the Declaration. But Mr. Labertew's opportunistic approach falls short. He argues with a straight face that Mrs. B lacked capacity to consent to the arbitration provision in the Terms of Use, but that Mrs. B later *had* sufficient capacity to appoint him as her attorney in fact *contractually* under a power of attorney. That power of attorney is a *contract*, not a testamentary instrument, and Mr. Labertew's legal contortions fail to carry the day. Mr. Labertew's arguments regarding capacity apply with equal force to his own appointment, which he inherently calls into question by his own allegations. The Declaration should be excluded.

## ARGUMENT

### I.   MR. LABERTEW MISCONSTRUES THE FEDERAL RULES.

#### A.   Rule 705 Does Not Absolve Plaintiff of the Requirements Under Rule 702 and FRCP 26.

Mr. Labertew argues that "Rule 705 expressly permits introduction of an opinion by an expert without prior disclosure of all reasons or data, subject to the Court's discretion." (Opposition ("Opp'n") at 4.) But that Rule simply relates "to the manner of presenting testimony at trial." *See* Fed. R. Evid. 705 advisory committee's note to 1993 amendment. In other words, under Rule 705, "the trial court is given considerable latitude *over the order in which evidence*

*will be presented to the jury.*" *Univ. of R.I. v. A.W. Chesteron Co.*, 2 F.3d 1200, 1218 (1st Cir. 1993) (emphasis added). Rule 705 does nothing to otherwise absolve expert opinion testimony from the strictures of Rule 702 of the FRE, or Rule 26 of the FRCP. Indeed, Mr. Labertew's contrived reading of Rule 705 would render those requirements in Rule 702 and Rule 26 meaningless. Mr. Labertew's Rule 705 argument is unsupported and unavailing.

**B.    Treating Physicians Are Under the Same Rules as Any Other Experts and Must Show Sufficient Facts and Data and Reliable Principles and Methods.**

Mr. Labertew also suggests that Dr. Kagen's Declaration is essentially admissible *per se* because Dr. Kagen is a treating physician. (Opp'n at 10-11.) But Mr. Labertew misconstrues the FRE and relevant case law. Mr. Labertew cites Advisory Committee Notes on Proposed Rules for Rule 703 of the FRE, for example, to suggest that the opinions of treating physicians are "traditionally allowed." (Opp'n at 10.) But Rule 703 simply relates to the kinds of facts or data on which an expert can base their opinion. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."). Neither Rule 703, nor its Advisory Committee Notes, provide that a purported expert can simply fail even to list the facts or data on which they rely, or the principles and methods they employed. Nor do those authorities provide that treating physicians are absolved from establishing that their facts and methods are sufficient and reliable. Rule 703 does *not* supersede Rule 702.

Mr. Labertew also cites *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), to suggest that Dr. Kagen's conclusory assertions are permissible simply because he is a treating physician. (Opp'n at 9-10.) But that citation from *Kumho* simply relates to the "latitude" afforded

trial courts "in deciding *how* to test an expert reliability." *Id. Kumho* does not, as Mr. Labertew

suggests, provide that treating physicians can escape a test of their reliability completely.

Mr. Labertew finally suggests that a Rule 702 attack would not be "well framed" where

the physician uses "a generally accepted diagnostic methodology." (Opp'n at 10-11 (quoting

*Mangrum & Benson on Utah Evidence*, at p. 528 (2011-2012 ed.)).) But that suggestion

underscores the problem with Dr. Kagen's Declaration to begin with—the Declaration provides

no meaningful explanation of his methodology at all, much less one that confirms that his

methodology is "generally accepted." It cannot be tested and must be excluded.

### C.    Mr. Labertew's Rule 56 Argument is Illusory.

Mr. Labertew attempts to argue that WinRed's Motion to Stay and Compel Arbitration

would fail under Rule 56 of the FRCP, but he misses the key point. (Opp'n at 8-9.) Rule 56

relates to the impermissibility of the Declaration for the simple reason that under Rule 56, like

here, "the mere existence of a contrary expert opinion—particularly a conclusory expert

opinion—does not preclude summary judgment." *Standish v. Jackson Hole Mountain Resort

Corp.*, 997 F.3d 1095, 1106 n.8 (10th Cir. 2021). In other words, conclusory expert opinions—

like those offered by Dr. Kagen—are insufficient to create an issue of fact. Dr. Kagen's

conclusory assertions cannot create an issue of fact regarding capacity, and Mr. Labertew does

not address that point in any meaningful way.

Instead, Mr. Labertew argues that WinRed's Motion to Stay and Compel Arbitration

would fail under Rule 56 based on Mr. Labertew's self-serving view of the "scope" of WinRed's

Motion. (Opp'n at 8-9.) But that argument about scope is artful and fails to recognize that

WinRed brought the motion to stay and compel arbitration under the Federal Arbitration Act, 9

U.S.C. §§ 3-4, 206, and the Utah Uniform Arbitration Act, § 78B-11-101, *et seq.* Mr. Labertew further fails to recognize that this Court ordered additional briefing on the third-party beneficiary issue. That third-party beneficiary issue is properly before this Court on WinRed's Motion to Stay and Compel Arbitration, and Mr. Labertew's arguments to the contrary are unavailing.[1]

### D.      Mr. Labertew Failed to Satisfy Rule 26.

Mr. Labertew argues that he does not need to comply with Rule 26 of the FRCP because of this Court's Order to stay deadlines pending resolution of the Motion (Dkt. 45). (Opp'n at 9.) But that Order does *not* absolve Mr. Labertew of his Rule 26 obligations where, as here, he affirmatively seeks to admit expert opinion testimony. Mr. Labertew further argues that his non-compliance with Rule 26 would be excused in any event because he "would be entitled to supplement Dr. Kagen's declaration under Fed. R. Civ. P. 26(2)(e)." (*Id.*) But that argument is illusory because he has simply failed to supplement.

## II.    MR. LABERTEW SUGGESTS THAT DR. KAGEN'S DECLARATION IS LAY TESTIMONY AND THAT EXPERT TESTIMONY IS NOT NEEDED.

Mr. Labertew also argues that expert testimony is not required to establish that Mrs. B lacked capacity. (Opp'n at 11-14.) Mr. Labertew further suggests that Dr. Kagen's Declaration is actually filled with lay opinion testimony instead of expert opinion testimony. (*Id.* at 13-14.) His arguments about lay testimony fail for at least three reasons.

First, it is manifest from Dr. Kagen's Declaration that he seeks to opine based on his scientific, technical, and specialized knowledge as Mrs. B's treating physician. His Declaration is

---

[1] Mr. Labertew also misconstrues the record. Mr. Labertew overlooked that WinRed was an express third-party beneficiary of the Terms of Use when he brought his Opposition to the Motion to Stay and Compel Arbitration.

replete with his personal medical credentials and conclusory assertions about his technical medical examinations, which lead to his opinions "[t]o a reasonable degree of medical probability." (*See* Decl. of Dr. Michael Kagen ¶¶ 17, 19-20.) The problem for Dr. Kagen is that FRE 701 provides that lay witness testimony must be "*not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c) (emphasis added). Whereas, here, purported testimony *is* based on such scientific, technical, or other specialized knowledge, it must meet the strictures of Rule 702.

Second, Dr. Kagen's Declaration does not offer any meaningful *facts* regarding Mrs. B's capacity aside from his conclusory assertions and opinions. Mr. Labertew tellingly fails to point out which, if any, of the assertions in Dr. Kagen's Declaration might constitute lay testimony. The reason is clear—his Declaration is filled with conclusory opinions that are based on his purported specialized knowledge.

Third, Mr. Labertew's assertion that expert opinion testimony is not essential underscores a broader point. If he is correct that expert testimony is not essential, that fact weighs *against* admission of Dr. Kagen's problematic Declaration, not in favor of it. If Mr. Labertew could have presented *facts* regarding Mrs. B's capacity—instead of conclusory assertions in the Verified Complaint and Dr. Kagen's Declaration—he should have done so. He did not. Dr. Kagen's Declaration falls short and should be excluded.

## III.   MR. LABERTEW ARGUES THAT MRS. B HAD CAPACITY TO GIVE HIM A CONTRACTUAL POWER OF ATTORNEY, BUT INSUFFICIENT CAPACITY TO AGREE TO A CONTRACTUAL ARBITRATION PROVISION.

Finally, Mr. Labertew cannot sidestep one, unmistakable reality—if Mrs. B lacked capacity to assent to the Terms of Use, then she almost certainly lacked capacity to appoint Mr.

Labertew as her attorney in fact. All of Mr. Labertew's contentions regarding Mrs. B's capacity apply with equal force to her capacity to appoint Mr. Labertew. Mr. Labertew's verified allegations in the Complaint inherently call into question the validity of Mr. Labertew's appointment. Those allegations include that Mrs. B "suffers from severe dementia that is accompanied with poor memory, lack of problem-solving skills, and poor executive functioning, all of which have been in decline for many years now." (Compl. at 3, ¶ 8.) Mr. Labertew's own allegations call into question his purported appointment.

To evade this reality, Mr. Labertew attempts to "thread the needle," arguing on one hand that Mrs. B's capacity was so lacking that she could not assent to a straightforward contractual provision on arbitration, while arguing in the same breath that her capacity was unquestionably sufficient to enter a contract to endow him with broad, unchecked authority over her financial and personal affairs. Mr. Labertew's efforts fall short for the two reasons outlined below.

### A.     Mr. Labertew's Arguments About Testamentary Capacity Fail Because a Power of Attorney Is Not a Testamentary Instrument Like a Will or Trust.

One of Mr. Labertew's principal arguments is that "capacity to assent and testamentary capacity involves two separate standards," and that by questioning his purported appointment as attorney-in-fact, WinRed has "repeatedly asserted the logical fallacy of false equivalence." (Opp'n at 4-5.) In other words, Mr. Labertew argues that separate standards apply to his appointment because it was "testamentary." (*Id.*)

The problem for Mr. Labertew, however, is that his purported appointment does *not* involve testamentary capacity at all. "Testamentary" means "[o]f, relating to, or involving a will or testament." Black's Law Dictionary (11th ed. 2019). In other words, testamentary capacity is capacity to enter a will or trust. A power of attorney is not a "testamentary" document for the

simple reason that it is not a will or trust. The touchstone of a testamentary instrument is that it delegates powers that survive the death of the grantor. The United States Supreme Court has explained that "[t]he general rule, that a power of attorney, though irrevocable by the party during his life, is extinguished by his death, is not affected by the circumstance, that testamentary powers are executed after the death of the testator." *Hunt v. Rousmanier's Adm'rs*, 21 U.S. 174, 206-07 (1823) ('The [testamentary] power is, necessarily, to be executed after the death of the person who makes it, and cannot exist during his life."). Powers of attorney are exercised during the life of the grantor and are extinguished upon the grantor's death. Testamentary powers, in contrast, are exercise *after* the grantor's death. For these reasons, the Utah Code provides that "[t]he capacity required to create . . . a revocable trust . . . is the same as that required to make a will," but provides no similar such provision related to the capacity for a power of attorney. Utah Code Ann. § 75-7-604. Mr. Labertew's appointment was not testamentary and his attempts to invoke standards regarding testamentary capacity are unavailing.

**B.      Mr. Labertew's Arguments Suggest That Mrs. B Would Lack Testamentary Capacity in Any Event.**

Even if Mr. Labertew's appointment was an issue of testamentary capacity, which it is not, Mr. Labertew's own allegations regarding Mrs. B's capacity would call into question the validity of his appointment in any event. The Utah Uniform Probate Code defines "Incapacitated" or "incapacity" as follows:

> "Incapacitated" or "incapacity" is measured by functional limitations and means a judicial determination after proof by clear and convincing evidence that an adult's ability to do the following is impaired to the extent that the individual lacks the ability, even with appropriate technological assistance, to meet the essential requirements for financial protection or physical health, safety, or self care:
> (a)      Receive and evaluate information;
> (b)      Make and communicate decisions; or

      (c)      Provide for necessities such as food, shelter, clothing, health care, or safety.

Utah Code Ann. § 75-1-201(22).[2] Mr. Labertew's assertions that Mrs. B "suffers from severe dementia that is accompanied with poor memory, lack of problem-solving skills, and poor executive functioning, all of which have been in decline for many years now" (Compl. at 3, ¶ 8), suggest that Mrs. B would not have sufficient *testamentary capacity* to appoint him under those standards.[3] Mr. Labertew cannot have it both ways. If Mrs. B lacked capacity to assent to the arbitration provision in the Terms of Use, she almost certainly also lacked capacity to *contractually* appoint Mr. Labertew as her attorney in fact.

## CONCLUSION

Because Dr. Kagen's Declaration asserts bare conclusions rather than providing a testable, reliable basis for his testimony, the Court should exclude the Declaration as inadmissible under FRE 702. The testimony should also be excluded for failure to make proper disclosures under Rule 26(a)(2)(B).

---

[2] Mr. Labertew also argues that "[a]ppointment of an attorney in fact is analogous to guardianship." (Opp'n at 5, n.2.) But that argument overlooks that the Utah Code provides that guardians be appointed through a formal judicial proceeding in which the allegedly incapacitated persons have counsel appointed for purposes of the proceeding and the allegedly incapacitated persons may be examined by a court-appointed physician. *See, e.g.,* Utah Code Ann. § 75-5-303. The appointment of an attorney in fact is a far cry from the appointment of a guardian in light of those realities.

[3] Mr. Labertew also argues, without authority, that WinRed does not have standing to challenge his purported appointment. (Opp'n at 5, n.3.) But that argument overlooks that Mr. Labertew is suing WinRed. It is axiomatic that WinRed would have standing to assert that the individual suing it has not been validly appointed to do so.

DATED this February 22, 2023.

KUNZLER BEAN & ADAMSON, PC

*/s/ Robert P. Harrington*
Ryan B. Bell
Robert P. Harrington

WINSTON & STRAWN LLP

Abbe D. Lowell (admitted *pro hac vice*)
Christopher D. Man (admitted *pro hac vice*)

*Attorneys for Defendant WinRed, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of February, 2023, I caused a true and correct copy

of the foregoing **REPLY MEMORANDUM IN SUPPORT OF OBJECTION TO**

**PLAINTIFF'S DECLARATION OF DR. MICHAEL KAGEN, M.D.** to be submitted for

electronic filing through the Court's CM/ECF system and accordingly served on the following:

Trent J. Waddoups
**CARR & WADDOUPS**
8 East Broadway
Judge Building, Suite 609
Salt Lake City, Utah 84111
trent@cw-law.net

*Counsel for Plaintiffs*

*/s/ Kiersten Slade*
Kiersten Slade